M. B. H. ENTERPRISES, INC.,
Plaintiff–Appellant,

v.

WOKY, INC., Defendant–Appellee.

No. 80–1210.

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 1980.

Decided Oct. 15, 1980.

Gregg I. Anderson, Denver, Colo., for plaintiff–appellant.

Andrew O. Riteris, Milwaukee, Wis., for defendant–appellee.

Before PELL and BAUER, Circuit Judges, and CROWLEY, District Judge.*

BAUER, Circuit Judge.

Stated simply, the issue here is whether plaintiff M. B. H. Enterprises, Inc. ("MBH"), may, by virtue of its registration with the United States Patent and Trademark Office of the words "I LOVE YOU" as a service mark for "entertainment services in the nature of radio programs and personal appearances by a disc jockey," prevent defendant Milwaukee radio station WOKY, Inc., from broadcasting and pasting on billboards and auto bumpers that it "loves" the City of Milwaukee, Wisconsin. The issue was submitted to the district court on MBH's motion for a preliminary injunction and WOKY's motion for summary judgment. Denying the former and granting the latter, the court ruled that, under 15 U.S.C. § 1115(b)(4), WOKY was entitled to judgment in its favor because it had in good faith merely described its radio services and had not attempted to identify them or to confuse them with those of another station. We affirm.

I

MBH is a Colorado corporation that has for some time marketed to radio stations a promotional campaign in which client stations profess their love for their locality. The "heart" of the campaign, MBH avows, is the federally registered radio entertainment service mark "I LOVE YOU".[1] Taking Denver, Colorado, where the promotion was first used, as an example, the MBH campaign proceeds as follows: MBH licenses a Denver radio station to employ the MBH service mark by broadcasting the words "I LOVE YOU DENVER." The station's message is then reinforced by repetition in television, billboard, newspaper, and bumper sticker advertisements. MBH also arranges for a local retailer to sell T–shirts and glassware supplied to it by MBH and bearing the words "I LOVE YOU DENVER." The retailer advertises itself over the client station as the source of "official" "I LOVE YOU DENVER" T–shirts and glassware. From the sale of these objects MBH derives the bulk of its profit. Since the promotion was first used in Denver in 1970, MBH has sold it to over thirty radio stations in cities including Boston, Massachusetts; Dallas, Texas; Pittsburgh, Pennsylvania; Tulsa, Oklahoma; and Milwaukee, Wisconsin.

In December of 1976, MBH licensed the promotion to Milwaukee radio station WISN. WISN proceeded to broadcast approximately 180 times a week the words "I LOVE YOU MILWAUKEE." The slogan was also carried on bus placards and formed the theme for an "art contest" co–sponsored by the station and a Milwaukee museum. A local Gimbels store carried the T–shirts and glassware, which apparently sold well. When WISN renewed the license in 1978, plans were in the works for new local and national promotional efforts centered on the "I LOVE YOU" theme. Also contemplated were "jingle packages" that would, presumably, have sung WISN's praises of Milwaukee. Sometime prior to June of 1979, we are not informed precisely when, WISN cancelled the agreement with MBH.

During or prior to March of 1979, WOKY began its own campaign to tell Milwaukee of its love. Although aware of aspects of the WISN campaign and MBH "I LOVE YOU" efforts in other cities, WOKY apparently decided, on advice of counsel, that it was entitled to say in an organized and persistent manner that it "loved" Milwaukee. There is some suggestion in the record that WOKY personnel believed that a Mil-

---

* The Honorable John Powers Crowley, Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. Reg. No. 1,111,960 (Jan. 23, 1979). MBH has also registered the following related marks with the patent office: "I LOVE YOU" for glassware and mugs, Reg. No. 1,111,334 (Jan. 16, 1979); "I LOVE YOU" for travel bags, Reg. No. 1,087,312 (Mar. 14, 1978); "I LOVE YOU DENVER" for entertainment services in the nature of radio programs and personal appearances by a disc jockey, Reg. No. 1,080,611 (Dec. 27, 1977). These registrations are not at issue in this case.

waukee radio station was not morally obliged to pay a Colorado corporation for the right to say that it loved Milwaukee. In any event, WOKY adopted three verbal formulations of its affection for its city and displayed them on billboards and bumper stickers, broadcasted them, and aired them in television advertisements. The simplest was "WOKY LOVES MILWAUKEE." As a variant, the message, "I LOVE MIL-WAUKEE!" was disseminated, signed by WOKY's call letters. Finally, WOKY's disc jockeys declared their feelings in slogans that took the form, for example, of "ROBB EDWARDS LOVES MILWAUKEE." All the above advertisements carried WOKY's call letters and prominently displayed its frequency, "Radio 92." WOKY sold no T-shirts, glassware, or other objects; the bumper stickers were apparently given to the public without charge.

## II

In the district court, MBH sought both an injunction and damages on trademark infringement, trademark disparagement, and unfair competition theories. The court granted WOKY's motion for summary judgment on all counts, reasoning that the infringement action was defeated by the absence of any genuine issue of fact concerning WOKY's entitlement to a "fair use" defense under 15 U.S.C. § 1115(b)(4), and further reasoning that the unfair competition count failed because the uncontroverted facts demonstrated no likelihood of public confusion due to the similarities between WOKY's slogans and the MBH/WISN campaign. The court apparently viewed the

2. Technically, the § 1115(b)(4) defense applies only in actions in which infringement of an "incontestable" mark, a mark that has been registered for over five years, is alleged. The statutory defense is but a restatement of the common law defense, however, *Venetianaire Corp. v. A & P Import Co.*, 429 F.2d 1079, 1081 (2d Cir. 1970), and is, by virtue of 15 U.S.C. § 1115(a), available in this action.

3. MBH has also argued that WOKY failed to plead a fair use defense in the district court and that, therefore, the district court erred in basing its decision on such ground. In its answer, WOKY stated:

disparagement count as turning on the disposition of the infringement count.

The primary focus of the district court's reasoning was § 1115(b)(4), which provides, in pertinent part, that it shall be a defense to an infringement action to demonstrate

That the use of the ... term, or device charged to be an infringement is a use, otherwise than as a trade or service mark, ... of a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party ....[2]

In applying the defense to the facts at bar, the court found, first, that WOKY had not used its slogans as service marks because the call letters "WOKY," and not the slogans, were used by WOKY to identify itself to the public. Second, the court found that WOKY had acted fairly and in good faith merely to describe its services when it disseminated the slogans because its inclusion of its call letters in the slogans demonstrated that it had no desire to confuse or mislead the public as to the origin of its broadcasts. Finally, the court found that WOKY's slogans merely described its services by attributing to them the quality of "civic involvement," an attribution, the court said, WOKY was entitled to make.

On appeal, MBH argues primarily that material issues of disputed fact exist with respect to each of the above rulings.[3] MBH first argues that WOKY used its slogans as service marks, and supports its contention by noting that WOKY submitted its slogans to Arbitron, a radio audience measuring service, to aid Arbitron in determining

Specifically, WOKY denies that any law, trademark or otherwise, exists which prohibits WOKY, a Milwaukee broadcasting station which in fact loves Milwaukee, from telling to the Milwaukee community the truthful fact that WOKY and its announcers LOVE MILWAUKEE.

Manifest in this statement are the assertions that WOKY stated that it loved Milwaukee in good faith merely to describe its feelings, and hence its services. The answer was sufficient to put MBH on notice as to what defense it should expect to meet. We find no merit in MBH's contentions to the contrary.

whether members of the public that it polled had listened to WOKY. WISN apparently also submitted its "I LOVE YOU MILWAUKEE" slogan to Arbitron for a similar purpose. Second, MBH contends that WOKY did not act in good faith because it knew of WISN's promotion, it sought advice of counsel before it disseminated its slogans, and it allegedly did not express its love for Milwaukee "without thought of commercial gain." Rather, MBH maintains that WOKY sought to plagiarize MBH's successful campaign and to persuade the public that WOKY, and not WISN, "is the true radio station identified as the lover of Milwaukee." Finally, MBH contends that WOKY's slogans are not descriptive both because they are unnecessary to the description of radio services and because they are "arbitrary, fanciful, and distinctive" when applied to a radio station. Asserting that WOKY's slogans can hardly be viewed as the result of WOKY's "genuine heartfelt affection," MBH opines,

> If WOKY really loved Milwaukee and wanted to say so, why did they attach "WOKY" to all their statements? True love does not require the identity of the lover.

Nothing of record supports this last observation.

WOKY's response to the foregoing is that it is a "radio station which indeed loves Milwaukee and says so." Affidavits by WOKY personnel to this effect are of record. In essence, WOKY's position on appeal is that the district court's ruling on the basis of the "fair use" defense is correct, but that, in any event, its slogans are protected speech under the First Amendment. This last contention was raised in the trial court but was not reached.

### III

Having chronicled the jousts of the knights who seek the hand of the lady, and keeping in mind the judgment Shakespeare's Rosalind passed upon ideals of high romance,[4] we first state what is *not* at issue here. The validity of MBH's mark, except so far as the Constitution is involved, is not at issue. WOKY has not contested the validity of the mark under the statute. Independent questions of unfair competition and trademark disparagement are also not at issue. MBH has argued only the infringement question before this Court, apparently conceding that the pendent unfair competition count and the disparagement count may not succeed if the infringement count fails.[5] Accordingly, the only issue we must address is whether the district court erroneously held that no genuine issue of material fact existed with respect to each of the following propositions: First, that WOKY's slogans were not service marks; second, that WOKY employed them in good faith merely to describe its services; and, third, that the slogans were in fact descriptive of WOKY's services. Before turning to these issues, we note that the material facts of record concerning each issue are undisputed. We further observe that the case was submitted to the district court on MBH's motion for preliminary injunction and WOKY's motion for summary judgment on the present record by agreement of both parties. Accordingly, we need only inquire whether the district court erred as a matter of law in its application of the "fair use" defense to the undisputed facts of record.

As will become apparent, whether WOKY's slogans are or were used as service marks will depend on whether WOKY intended to use them as service marks and whether they in fact performed the function of a service mark. This means, in effect, that the only real issues here involve WOKY's good faith and the descriptiveness of the slogans. A service mark is a symbol or combination of symbols used by a source of services to identify itself to the public as the source of its services and to create in

---

4. *As You Like It*, Act IV, sc. i: "But these are all lies, men have died from time to time, and worms have eaten them, but not for love."

5. Cf. *Westward Coach Mfg. Co. v. Ford Motor Co.*, 388 F.2d 627, 632 (7th Cir.), *cert. denied*, 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386 (1968).

the public consciousness an awareness of the uniqueness of the source and of its services. 15 U.S.C. § 1127; *see, e. g., Union Carbide Corp. v. Ever–Ready, Inc.,* 531 F.2d 366, 380–81 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976); *Venetianaire Corp. v. A & P Import Co.,* 302 F.Supp. 156, 158–59 (S.D.N.Y.1969), *aff'd,* 429 F.2d 1079, 1082 (2d Cir. 1970). A trade or service mark functions as a vehicle for the carriage of positive messages concerning the product or service which it denotes, *see generally Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co.,* 316 U.S. 203, 205, 62 S.Ct. 1022, 1023, 86 L.Ed. 1381 (1942); its purpose, thus, is to separate those goods or services from others in the public consciousness, to identify them as the product of a single source, and to represent them in the mind of the public.

Whether WOKY's slogans performed this function can only be judged by an examination of their intended purpose and their actual effect. If WOKY intended in good faith merely to describe and not to designate its services by its slogans, and if the slogans did in fact describe the services and did not designate them, WOKY is entitled to prevail by reason of the fair use defense.

■ WOKY's good faith can be judged only by inquiry into its subjective purpose in using the slogans. On one hand, WOKY plainly had no intent to confuse its services with those of WISN or any other MBH licensee. As the district court noted, WOKY identified itself by its call letters and its frequency when using the slogans. We think the court was justified in finding that WOKY did not act with the intent to confuse the public. On the other hand, it is plain from WOKY's knowledge of the WISN campaign, from its submission of its slogans to Arbitron, and from the general nature of its use of its slogans that WOKY intended to derive commercial advantage from its declarations of love for Milwaukee. It does not follow of necessity from this, however, that WOKY intended to employ the slogans as service marks. WOKY's intent may well have been merely to describe to the public what it felt to be real and

valuable qualities of its radio service. This appears possible because WOKY's use of various slogans unquestionably diminished for any one slogan that element of iconic power that is the essence of a service mark. Moreover, WOKY's use of its call letters and frequency, which are plainly service marks, indicates that an intention to use the slogans also as service marks may not have been present. We do not feel, on the basis of the record, that the district court was in error in concluding that WOKY merely attempted in good faith to describe its services.

■ The more difficult question involves the actual function of the slogans. It must be noted at the outset that a mark or device that is merely descriptive is not registrable as a service mark and is not protectible as such in the absence of a well–established secondary meaning. *See, e. g., Union Carbide Corp. v. Ever–Ready Inc., supra,* 531 F.2d at 379; *Westward Coach Manufacturing Co. v. Ford Motor Co.,* 388 F.2d 627, 634 (7th Cir.), *cert. denied,* 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386 (1968). If WOKY's slogans are found to be descriptive, it would follow that they are unlikely to have functioned as service marks. Descriptive devices are unsuited to the function of marks both because they are poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature. We turn, thus, to the question of whether WOKY's slogans are descriptive.

Descriptive devices are those that "impart information directly" or are necessary to the description of the goods or services in question. *Union Carbide Corp. v. Ever–Ready, Inc., supra,* 531 F.2d at 379 (*quoting* A. Seidel, S. Dalroff & E. Gonda, *Trademark Law and Practice* § 4.06 at 77 (1963)). They are to be distinguished from fanciful or coined devices, which are utterly undescriptive, and from "suggestive" devices, which combine elements of descriptiveness and of fancy. "Suggestive" devices convey "an idea which requires some operation of the imagination to connect it with the"

service. *Id.; see also Westward Coach Manufacturing Co. v. Ford Motor Co., supra*, 388 F.2d at 631–32.

It may safely be said that the word "love" and its variants are not coined or fanciful; the words "I love you" and similar phrases are, in fact, some of the more powerful symbolic "devices" in our language. WOKY's slogans must, accordingly, be found to be either descriptive or suggestive. MBH contends that they are suggestive, if not purely fanciful, because they are not necessary to the description of radio services and because they have no "direct" relationship to such services. We cannot accept this reasoning. WOKY's slogans clearly "impart information directly." The district court phrased the information imparted as the attribution of the quality of civic involvement. That description will do as well as any. But we think that the essence of what is involved here can be understood only through comprehension of the complexity of a symbol such as the word "love."

We are well aware of the fact that the word has many meanings.[6] One accepted definition in our time is the meaning WOKY obviously intended by its use of the word. WOKY did *not* mean that it was romantically under the spell of lady Milwaukee. WOKY meant that it liked Milwaukee. It meant that Milwaukee is a pleasant city with many advantages, a good place to live, a community composed of persons who enjoy, in general and in the abstract, the affection and respect of those who provide the radio service denominated WOKY. So much is understood commonly by what WOKY said. If WOKY's slogans "require some operation of the imagination" to connect them with radio services, it is only because the very symbol that WOKY employed has myriad meanings. The meaning intended, however, requires no imagination to support the connection to radio ser-

vice. Neither is it arbitrary as so applied. A radio station is a voice of the community, is regulated by government as such, and has legal, if not moral, obligations to care for and serve its community well. Plainly a radio station may say that it cares for its community; to properly and accurately describe what is its proper task, it must say so.

■ It might be contended that WOKY was free to use other words than "love" to convey its meaning. We place little store in this argument. The owner of a registered mark "may not appropriate to itself common English slang terms and thus prevent others from using such phrases in their descriptive sense." *B & L Sales Associates v. H. Daroff & Sons, Inc.*, 298 F.Supp. 908, 911 (S.D.N.Y.1969), *aff'd*, 421 F.2d 352, 354 (2d Cir.), *cert. denied*, 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970). *A fortiori*, one may not appropriate from descriptive use the words "I love you" or variations of those words. Words are not interchangeable; they are each unique. There is a limit to the ability to appropriate the language for exclusive commercial use. That limit is reached and surpassed by the claims of MBH in this case.

■ Accordingly, the district court did not err in finding that WOKY's slogans were descriptive and were disseminated in good faith merely to describe WOKY's services. Because the slogans were descriptive, there is little likelihood that they functioned as service marks. We conclude that they did not so function, however, for the additional reason that MBH presented no evidence to show any likelihood that consumers would take the slogans for service marks or would become confused, as a result of the slogans, concerning the source of WOKY's services. The only evidence of a potential for confusion is the fact that WOKY's slogans bear a certain similarity to

**6.** The Oxford English Dictionary contains many definitions of the word "love." Most prominently, the word has a religious sense, as in, for example, the First Epistle of John, and in a romantic sense, as illustrated by Keats' poem, "La Belle Dame Sans Merci." Inconspicuous among the definitions given is the one applica-

ble to this case. Of the transitive verb "to love," with a thing as its object, the fourth definition, subpart "b," reports: "To have a strong liking for; to be fond of; to be devoted or addicted to. In the U. S. a frequent vulgarism for *like*."

the MBH service mark. As we have noted, however, WOKY's advertisements carried both its call letters and its frequency. In the absence of any indication that that information was not sufficient to avoid any potential for confusion, we conclude that the district court properly found no likelihood of confusion on the facts of record.

Because we base our decision on the fair use defense, we have no occasion to consider the First Amendment issue also presented in this case. Because our decision has turned in part on the meaning of the word "love," we will leave the reader with what is the closest thing to a legal definition of the word that we have discovered:

> Love–Day. In old English law. The day on which any dispute was amicably settled between neighbors; or a day on which one neighbor helps another without hire.[7]

May the parties have such a day.

Affirmed.

---

7. *Black's Law Dictionary* 1097 (4th rev. ed. 1968).