**Tom GREEN, Plaintiff,**

v.

**G. HEILEMAN BREWING COMPANY, INC. and the Hadley Group, Defendants.**

**No. 91 C 0028.**

United States District Court, N.D. Illinois, E.D.

Jan. 22, 1991.

Marvin N. Benn, Hamman & Benn, Daniel Laurence Kegan, Diane Lidman Prendiville, Cindy D. Reicin, Kegan & Kegan, Ltd., Chicago, Ill., for plaintiff.

Robert Dennis Claessens, James Van Santen, Dolores K. Hanna, Hill, Van Santen, Steadman & Simpson, P.C., James D. Zalewa and Mark Jay Liss, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case comes before this court on Tom Green's ("Green") motion for a temporary restraining order. This court conducted a one day hearing on January 10, 1991. The court has heard the evidence and considered the exhibits, memoranda of law, and arguments of counsel. Now fully advised on the matter, the full hearing having been concluded, the court makes the following findings.

### 1. *Findings of Fact*

1. Green alleges that the defendants, G. Heileman Brewing Company ("Heileman") and the Hadley Group ("Hadley"), have violated the Lanham Act. The defendants claim that they are protected by the Lanham Acts fair use defense. 15 U.S.C. § 1115(b)(4). This court has original jurisdiction over the Lanham Act claim. See 28 U.S.C. § 1331.

2. The parties do not dispute that this court has personal jurisdiction over them, or that venue in this court is proper.

3. The plaintiff alleges that he has a protectible trademark in the game "SUPERTICKETS" and the poster "SUPER TICKETS." The plaintiff has filed for trademark protection, and his application has been refused by the Patent and Trademark Office. Therefore, his claim of a protectible property interest is founded in the common law.

4. Defendant, Heileman, is in the business of selling Old Style beer. The trademark "Old Style", has been used by Heileman since 1902.

5. Defendant, Hadley, is a sales promotion agency that develops promotional games. Hadley has a reputation for creating original promotions for major corporations. This reputation is essential to the companies continued viability. To date, Hadley has developed major promotions for companies such as Nynex, Nike, Miller Brewing Company, Kentucky Fried Chicken, Nutra Sweet, Pepsi–Cola, and Gallo Winery.

6. Defendants, Heileman and Hadley, developed a promotion in which a ticket, called a SUPER TICKET, is attached to cartons of Old Style beer. These tickets enable the purchaser to win cash prizes and discounts on the purchase of beer. The promotion is affixed to 4,000,000 cartons of Heileman's beer. The promotion, which began in November of 1990, will end on January 31, 1991.

7. Heileman's trademark, "Old Style", is prominently displayed on all of its SUPER TICKET'S game pieces.

8. Green alleges that the defendants infringed on his trademark in violation of the Lanham Act, 15 U.S.C. §§ 1051 et seq., by use of the words SUPER TICKETS in their promotional game.

9. Heileman adopted its SUPER TICKETS promotion without any knowledge of Green's asserted legal rights.

10. Advertising expenditures by Heileman on its SUPER TICKET'S promotion has exceeded $1,000,000.

11. Over 12,000 people have called Heileman's toll free number inquiring about the promotion. No one expressed confusion with the plaintiff's SUPERTICKET game.

12. The plaintiff's alleged SUPERTICKET'S trademark, and the defendants' SUPER TICKET game pieces are dissimilar in appearance. Not only are they different in color and layout, but they have a different print style.

## 2. *Conclusions of Law*

■ This court has most recently discussed the standard for issuing injunctive relief in *Accurate Leather & Novelty Co. v. LTD Commodities Inc.*, slip op. at 3–4 1990 WL 205865 (N.D.Ill., December 6, 1990). The party requesting an injunction must address five points: the court is then to evaluate, on a "sliding scale", the evidence on each of those points. The five points are:

1. whether the plaintiff has an adequate remedy at law;
2. whether the plaintiff will suffer irreparable harm if the preliminary injunction is not issued;
3. whether the irreparable harm plaintiff will suffer if the preliminary injunction is not granted is greater than the irreparable harm the defendant will suffer if the injunction is granted;
4. whether the plaintiff has a reasonable likelihood of prevailing on the merits.
5. whether the injunction will harm the public interest.

*Id.*, citing *International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1988); *Illinois Psychological Association v. Falk*, 818 F.2d 1337, 1340 (7th Cir.1987). The sliding scale approach means that the greater the potential harm to the plaintiff if the injunction does not issue, and the lesser the harm to the defendant if it does, the less weight the court need place on the plaintiff's likelihood of success on the merits. *Id.* This court will consider each of these factors in turn.

A. Adequate Remedy at law and Irreparable Harm

If Green's claims are true, this infringement will cause irreparable harm to his business. In Trademark infringement cases, irreparable injury is presumed. *Helene Curtis Industries, Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1330 (7th Cir. 1977).[1]

---

1. Green also argues that if the defendants are not enjoined from this promotion due to the fact that only three weeks remain, there is nothing that will prevent them from reinstituting the campaign next year. A temporary restraining order is designed to prevent imminent injury. Therefore, the plaintiff's concern is not really an appropriate consideration here. In any event, this allegation does not add much to the plaintiff's argument because the court is already as-

## B. Balance of Harms

Assuming that the defendants are infringing on the plaintiff's trademark, he will suffer irreparable injury. On the other hand, if this court enters a temporary restraining order enjoining the promotion, and subsequently finds that there has been no trademark infringement, the defendants will suffer irreparable injury. The halting of this promotion in midstream could have a serious effect on the reputation of both Heileman and Hadley. The court will discuss the harms to each defendant separately.

Hadley's livelihood depends on its ability to create original ideas such as the SUPER TICKET promotion. If this court determines that Hadley imitated the plaintiff's promotion, it could have a serious impact on its ability to generate new business. In addition, a temporary restraining order could jeopardize Hadley's relationship with Heileman. The loss to Hadley of its hard earned reputation for developing original promotions coupled with the potential loss of Heileman as a customer, would be irreparable.

The loss to Heileman of its valued customers would be difficult to calculate if this promotion were to be temporarily restrained. Heileman's customers, who purchased Old Style beer with the expectation of winning valuable prizes, would be frustrated. The plaintiff, in his complaint, has requested that Hadley "destroy or otherwise dispose of its infringing product." The cost to Heileman if it were forced to recall 4,000,000 cartons of beer would be enormous. In addition, the promotion, which has been running for several months, only has three more weeks to go. Heileman has already invested over a million dollars in this campaign. To halt the promotion at this late date, could undermine the entire campaign. In addition, it would be forced to develop a new campaign in a relatively short period of time.[2]

## C. Likelihood of Success on the Merits

■ The plaintiff has virtually no chance of succeeding on the merits of his claim. The defects in the plaintiff's position are two fold: (1) the plaintiff has failed to show a protectible property interest in his use of the words SUPERTICKETS; and (2) even if the court were to find a protectible property interest, the plaintiff has not demonstrated any likelihood of confusion. In addition the defendants have a very strong likelihood of succeeding on their fair use defense. 15 U.S.C. § 1115(b)(4). The court will discuss each of these points in turn.

The plaintiff has no formal trademark registration, and therefore has the burden to establish a protectible right. In order to demonstrate a protectible property right, the plaintiff must demonstrate that the words "SUPERTICKETS" has acquired a secondary meaning in the mind of the consuming public. That means that the plaintiff must demonstrate that the primary significance in the minds of the consuming public is not the product but the producer. *Kellogg Company v. National Biscuit Company*, 305 U.S. 111, 119, 59 S.Ct. 109, 113–14, 83 L.Ed. 73 (1938). See also *M.B.H. Enterprises, Inc. v. Woky*, 633 F.2d 50, 54 (7th Cir.1980) ("Its purpose, thus is to separate those goods or services from others in the public consciousness, to identify them as a product of a single source, and to represent them in the mind of the

---

suming that if the defendants are infringing on his trademark, he will be irreparably harmed. The relative balance of equities does not materially change because of this potential future threat to the plaintiff's alleged trademark.

**2.** During oral argument, counsel for the plaintiff suggested an alternative to enjoining Heileman's SUPER TICKET promotion. The plaintiff requested that Heileman be restrained from continuing any advertising on its promotion. In the mean time, Heileman could still award prizes to its customers. This solution would not ameliorate all of the harms caused by the issuance of a temporary restraining order. Hadley would still be left with the stigma of having imitated plaintiff's game promotion, and its relationship with Heileman would still be strained. Heileman would be forced to abandon advertising on a promotion that has already cost it over $1,000,000. Here also Heileman would be forced to create a new advertising campaign in a very short period of time. The harm caused to both defendants would still be severe.

public"). There has been virtually no evidence presented that the consuming public associates the words SUPERTICKETS with the plaintiff. Furthermore, there has been no evidence of actual confusion. In fact, the defendant, Heileman, has received over 12,000 responses to its promotion and not one person has confused the promotion with the plaintiff's SUPERTICKETS game.[3]

■ The plaintiff has also failed to show a likelihood of confusion. The most important factors in determining whether there is a likelihood of confusion is the similarity of the marks, actual confusion and the intent of the infringer. *Henri's Food Products v. Kraft*, 717 F.2d 352, 355 (7th Cir.1983). As noted above, the plaintiff has failed to demonstrate any actual confusion at the consumer level. Furthermore, the court finds that the marks are dissimilar. Not only are the promotional marks different in colors and layout, but they have a different print style. The likelihood of confusion is also substantially diminished by the fact that in every instance where the defendants use the words SUPER TICKET, their Old Style trademark is prominently displayed. Finally, the plaintiff has failed to present any evidence that at the time the promotion was conceived, the defendants were aware of the plaintiff's SUPERTICKET game.

■ The defendants have a very strong likelihood of prevailing on the Lanham Act's fair use defense. 15 U.S.C. § 1115(b)(4). The elements of this defense are good faith and descriptiveness of the mark. *Woky*, 633 F.2d at 54. The 7th Circuit described the test this way, "if the defendant intended in good faith merely to describe and not to designate its services by its slogans, and if the slogans did in fact describe the services and not designate them, the defendant is entitled to the fair use defense." *Id.* As previously noted, the defendants use of the name SUPER TICKETS was done in good faith. Furthermore, the name SUPER TICKETS, as used by the defendants, merely describes the promotion. The ticket that the consumer receives is in fact a special or super ticket that entitles him to win valuable prizes and to receive a discount on the purchase of beer.

### D. Public Interest

Because there is very little likelihood of confusion, the public will not be harmed by this promotion. On the other hand, if the promotion is halted, the consumers who have purchased Old Style beer with the expectation of winning prizes will be frustrated. In addition, the prohibition of using the common descriptive words super and tickets could stifle future innovative promotional ideas such as this one. The public interest is clearly in favor of the defendants.

The balance of equities favor the defendants since they will be irreparably harmed by a temporary restraining order, and the plaintiff has virtually no chance of succeeding on the merits.

---

**3.** The plaintiff argues that the relevant consumers are the corporations that buy the SUPERTICKET promotion, not the ultimate consumer. The plaintiff has failed to alert this court to any case law that supports this position. In addition, the court does not agree with this contention. Even assuming arguendo that the plaintiff is correct in his assertion, he has failed to present any competent evidence of actual confusion.

The plaintiff has merely submitted his own self serving affidavit which points to only two supposed instances of actual confusion. The first example is a telephone call in which the President of Product Exposure, Inc. stated that her sales people were confused "with the respect to the Old Style 'SUPERTICKET' game." To begin with, this statement is unreliable because it constitutes triple hearsay. In any event, the court does not believe that this statement proves that those sales people thought that the Old Style game was really the plaintiff's SUPERTICKET game. The statement is ambiguous on its face. The second instance of actual confusion is when the Executive Vice President of Premium Marketing Network phoned to congratulate the plaintiff on his sale of the SUPERTICKETS promotion to a beer company. This statement constitutes hearsay and is unreliable.

For the foregoing reasons, the court denies the plaintiff's request for a temporary restraining order.