851 F.Supp. 895 (1994)
PRIDE COMMUNICATIONS LIMITED PARTNERSHIP, a limited partnership of the State of Illinois, Plaintiff,
v.
WCKG, INC., a Delaware corporation, Cox Broadcasting, Incorporated, a Delaware corporation, Cox Communications Incorporated, a Delaware corporation, and Cox Enterprises, Inc., a Delaware corporation, Defendants.
No. 94 C 263.
United States District Court, N.D. Illinois, Eastern Division.
January 26, 1994.
*896 Thomas R. Vigil, Vigil & Hanrath, Barrington, IL, Holland C. Capper, Chicago, IL, for plaintiff.
Kenneth P. Taube, Rothschild, Barry & Myers, Chicago, IL, Arnold P. Lutzker, Dow, Lohnes & Albertson, Washington, DC, for defendants.

PRELIMINARY INJUNCTION
LEINENWEBER, District Judge.
This matter is before the Court upon the Report and Recommendation of Magistrate Judge Pallmeyer to whom the matter was referred by this Court for hearing of Plaintiff's Application for Preliminary Injunction; and Magistrate Judge Pallmeyer having heard the testimony of witnesses in open court over a two (2) day period of Monday January 24, 1994 and Tuesday January 25, 1994, and having considered Exhibits received in evidence from Plaintiff and Defendants, and having heard and considered the arguments of counsel, and being fully advised in the premises; issued A REPORT AND RECOMMENDATION dated January 26, 1994, in which the Magistrate Judge found that Plaintiff was entitled to Preliminary Injunctive relief; and this Court having considered the REPORT AND RECOMMENDATION of Magistrate Judge Pallmeyer and *897 having been advised by Defendants' counsel that Defendants will not object to the REPORT AND RECOMMENDATION of the Magistrate Judge,
THE COURT FINDS AS FOLLOWS:
1. The Magistrate Judge's recommended decision is, in all respects, accepted by this Court.
WHEREFORE, IT IS HEREBY ORDERED THAT, EFFECTIVE this date, January 26, 1994, and until further order of Court:
(1) Defendants WCKG, INC., COX BROADCASTING INCORPORATED, COX COMMUNICATIONS INCORPORATED, COX ENTERPRISES, INC. and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who have actual notice of this ORDER are enjoined and restrained from the following:
(a) using, reproducing, copying, counterfeiting, imitating, broadcasting, communicating or otherwise using in any way without the consent of Plaintiff "STAR 107.9" or "Chicago's new STAR 107.9" or "Chicago's new star, STAR 107.9" as a corporate name, tradename, trademark, service mark, or otherwise;
(b) using, reproducing, copying, counterfeiting, colorably imitating, broadcasting, communicating, or otherwise using in any other way, any other term, trademark, tradename, or designation so similar to "STAR 105.5 RADIO" or "STAR 105.5" or "Star 105.5 FM" (with design) as to be likely to cause confusion or to cause mistake or to deceive; and
(c) displaying, marketing, selling, disseminating, communicating, or otherwise using any article of merchandise, display, advertisement, packaging, billboard, brochure, printed material, promotional product, or any other material, tangible thing, or good which bears "STAR 107.9" or any term, or designation so similar to "STAR 105.5 RADIO" or "STAR 105.5" or "STAR 105.5 FM" (with design) as to be likely to cause confusion or to cause mistake or to deceive.
(2) Plaintiff's security in the amount of $10,000 given in the form of a check issued by Plaintiff or James Hooker to secure the Temporary Restraining Order, shall stand as security for payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained by this Order.
(3) This PRELIMINARY INJUNCTION ORDER shall remain in full force and effect until further order of this Court.
(4) This matter is set for status on February 25, 1994, at 9 A.M., without further order of Court.

REPORT AND RECOMMENDATION
PALLMEYER, United States Magistrate Judge.
Plaintiff Pride Communications Limited Partnership holds a Federal Communications Commission license for radio station WZSR-FM, which broadcasts from Crystal Lake, Illinois at a frequency of 105.5 Mhz. WZSR characterizes its format as "adult contemporary," and its target audience as adults age 25 to 54. Since August 1991, WZSR has used "STAR 105.5" or "STAR 105.5 Radio" as its on-air name or "tag," on promotional products such as coffee cups and refrigerator magnets, and on printed materials. Plaintiff holds an Illinois Trademark Registration for the mark STAR 105.5 RADIO.
On December 31, 1993, Defendant WCKG, Inc., a corporation owned by Cox Broadcasting, Inc. purchased WYSY-FM, a Chicago radio station operating at the frequency of 107.9 Mhz. WYSY's new owners adopted a programming format of '70's music designed to appeal to an audience similar to that of WZSR. When WYSY went on air on January 6, 1994, calling itself "STAR 107.9," Plaintiff cried foul.
Plaintiff filed its complaint on January 14, 1994, charging Defendants with trademark infringement and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); the Illinois Trademark Registration Act, 765 ILCS 1035/1 et seq.; and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq. Plaintiff contends that its mark, "STAR 105.5," is *898 prima facie valid and protectable by virtue of its Illinois registration. Alternatively Plaintiff urges that its mark has secondary meaning and that Defendants' use of "STAR 107.9" will cause confusion among listeners. District Judge Harry Leinenweber entered a temporary restraining order against Defendants' use of the "STAR 107.9" mark on January 14, 1994, and referred the matter to this court for hearing on Plaintiff's motion for preliminary injunction. For the reasons that follow, that motion should be granted.

FINDINGS OF FACT
1. Plaintiff holds an FCC license for radio station WZSR-FM. WZSR is registered at Woodstock, Illinois and broadcasts at a frequency of 105.5 and at 3000 watts power into McHenry County and surrounding counties, including Cook, Lake, DuPage, Kane and Boone Counties in Illinois and counties in southeast Wisconsin. WZSR's format is "adult contemporary"; WZSR plays music of the 60's, 70's, 80's and 90's and has adopted as a descriptive slogan the words, "Today's hits, yesterday's favorites." In addition to music, WZSR broadcasts periodic news, traffic and weather reports.
2. Since August 1991, Plaintiff has used the names "STAR 105.5 RADIO" or "STAR 105.5" or "ST&R 105.5 FM" (with the in place of the A) for its radio broadcasting services. WZSR repeats the name "STAR 105.5" on air at least twelve times every hour, 24 hours per day. In addition, Plaintiff has used the mark on promotional materials, including several large banners that Plaintiff carries to and displays at events in the northwest suburban region; stationery and other printed material; coffee cups; plastic water bottles; foam beverage can holders; refrigerator magnets; and other goods. WZSR's mark appears on a mobile broadcast van that Plaintiff uses for traffic reporting. In addition, the mark appears on Plaintiff's "Giant Rolling Radio," a trailer modeled to look like a large portable radio, which Plaintiff transports to marketing and promotional events in the northwest suburbs. James Hooker, General Manager for WZSR, estimates that Plaintiff has spent at least $92,000.00 since August 1991 in efforts to promote the "STAR 105.5" name and mark.
3. On December 31, 1993, Defendant WCKG, Inc., purchased radio station WYSY, Aurora, Illinois, for approximately $9 million. WYSY broadcasts at a frequency of 107.9 Mhz and at 22,500 watts power. Its broadcast range over the greater Chicago area overlaps with a portion of WZSR's geographic broadcasting area; Plaintiff estimates that the overlap covers 80% of Plaintiff's target population.
4. WYSY's new owners adopted a new programming format for the station of exclusively '70's music. After reviewing the results of a listener poll, in which listeners were asked to choose from five possible names, Cox executives chose the name "Star," and adopted, as WYSY's new "tag," the words, "Star 107.9, Greatest Hits of the '70's all the time."
5. Michael G. Disney, Vice President and General Manager of WCKG and WYSY, was unaware prior to January 5, 1994, that any other radio station in the Chicago area used the word "Star" as its name. Mr. Disney believes that none of the other Cox executives who participated in selecting "Star 107.9" as WYSY's name was aware of the existence of a radio station calling itself Star 105.5. Mr. Disney first learned of these circumstances on Wednesday, January 5, 1994, the day before the new station's first scheduled broadcast. On that day, the station's operations manager, Debbie Morel, participated in a meeting with sales people in which one of her staff members, Elizabeth Melendez, introduced herself as having previously worked for Star 105.5 in Crystal Lake. Ms. Morel came to Mr. Disney and asked him whether he was aware that there was a station calling itself "Star" in the suburbs. Mr. Disney recalls that he reacted by saying, "You've got to be kidding." To find out for himself, Mr. Disney immediately got into his car and drove northwest until his car radio picked up WZSR. Mr. Disney listened to WZSR for about an hour, and heard the announcer identify the station as "Star 105.5" repeatedly.
6. Beginning on January 6, 1994, and continuing until the entry of the temporary restraining *899 order, WYSY began broadcasting its new format, calling itself "Star 107.9." Plaintiff introduced in evidence audiotapes of clips from WYSY broadcasts in which announcers refer to the station as "The New Star, Star 107.9," and singers can be heard intoning, "Star 107.9."
7. Bob Karraker is a communications student who worked for WZSR in the summer and fall of 1993 as an intern. On January 10, 1994, Mr. Karraker telephoned WZSR and spoke to Kathy Sandoz, the station's business manager. After exchanging small talk, Mr. Karraker asked Ms. Sandoz whether WZSR had acquired a new station. He told her that he had heard "Star 107.9" on the air, and assumed, because of the use of the Star name, that WZSR must have purchased it.
8. On January 10, 1994, James Hooker telephoned Michael Disney and objected to WYSY's use of the "Star" name. Mr. Disney told Mr. Hooker that "until Wednesday afternoon of the day before we went on the air, I did not know you existed." Mr. Disney stated that his attorneys had advised him "there is no problem," and that Defendants intended to continue to use the name.
9. WYSY's new owners have made a significant investment in plans to use the "Star" name. They contracted with an artist to prepare several sample logos. Prior to entry of the temporary restraining order, Defendants were poised to spend several hundreds of thousands of dollars on a television promotion. Defendant Cox Communications, Inc., prepared a package of materials to be faxed to potential advertisers over several days in which WYSY is referred to as "STAR 107.9 FM." Defendant's attorneys submitted a request to the FCC to change the call letters of WYSY to WWST; following entry of the temporary restraining order, that request was withdrawn.
10. Arbitron is a radio ratings service that collects information regarding radio broadcasting in a variety of ways. To determine the number of listeners tuning in to various stations, Arbitron distributes "diaries" to a sample of listeners and asks them to keep records of their listening. Listeners are expected to identify the radio stations to which they listen; they may do so by listing call numbers or frequencies or by listing the radio's "tag." Thus, a listener may simply list the name of the radio station to which he or she is listening, for example, "Q," or "Q101" rather than "WKQX-FM."
11. Once each calendar quarter, Arbitron submits a questionnaire to radio stations having some minimum number of listeners and asks the radio station to identify its name for purposes of the Arbitron diaries. A listing of the radio stations broadcasting in any geographical area can be obtained from Arbitron. Plaintiff's Exhibits 11 and 12 are Arbitron listings for the eleven-county[1] Chicago broadcasting area dated September 10, 1993 and December 23, 1993. These listings identify WZSR-FM as broadcasting in McHenry, Kane, and Lake Counties. WZSR's station name (for which only 25 characters are allotted by Arbitron) appears as "STAR105.5 TODAYS HITS YES."
12. Robert Watson operates a marine service center and snow removal business in Crystal Lake, Illinois. He advertises his services on WZSR. He estimates that he has spent $6,000 to $8,000 on advertising time; he has also exchanged snow removal services, offered by the radio station as a promotion to listeners, for on-air advertisement. Mr. Watson testified that he refers to the station as "Star" or "Star 105," and that others in Crystal Lake do so, as well. If he heard another station using the name "Star," Mr. Watson believes he would assume it had been purchased by Plaintiff. Mr. Watson listened to WYSY on the morning he testified, and characterized the format of that station as "almost identical" to what he hears on Star 105.5.
13. David R. Nelson is an account executive for Great Lakes Networks, an organization that sells broadcast advertising time. Mr. Nelson has been involved in radio broadcasting in some fashion since 1960. Mr. Nelson does private consulting, performing market analysis for prospective purchasers of radio stations. He has also had some involvement *900 in selecting names for radio stations. According to Mr. Nelson, the selection process may rely on "perceptual research" or may be made based on a "seat of the pants" assessment. Use of a name or idea that has been successful in another market is common; but before choosing a name for a particular market, a prudent manager should perform some investigation, and could do so as simply as by listening to every radio station on the dial.
14. Mr. Nelson is familiar with Plaintiff's radio station, but does not know the call letters. He testified, "All I know is `Star 105.'" If he heard the words "Star 107.9" on the air, Mr. Nelson would assume that Mr. Hooker had "released" the name to the new user or that the new user had "stolen" it. Recently, Mr. Nelson heard Star 105.5 playing in a clothing store in Barrington, Illinois. He asked employees at the store whether they liked it. They told him that they "listen to Star 105.5 all the time," but did not appear to know the call letters.
15. ABC/SMN is a radio network that provides recorded radio program formats to stations around the country. One of the formats provided by ABC/SMN was known as the "Starstation" format. Prior to January 1, 1994, radio stations that subscribe to the Starstation format identified the network by the name "Starstation" no more than three times per hour; the station would identify its own name far more often. WJKL-FM, a Chicago radio station known as "The Fox 94.3" carries the Superstation format. As of January 1, 1994, the name "Starstation" is no longer used on the air, although ABC/SMN continues to use the name in selling the format to user stations.
16. A search of state trademarks reveals a variety of uses of the name "star" in radio broadcasting and promotion, alone and in combination with other words, such as "Superstar," "Latin Star" and "Telestar." Several radio stations have registered marks for "Star" followed by a frequency; these include, for example, "Star 98.7" in California, "Star 104.1" in Connecticut, "Star 104.5" in New York, and "Star 101" in Florida. The only such mark in Illinois, however, is "Star 105.5 Radio," registered to Plaintiff.
17. There appears to be no federally-registered trademark for "Star," followed by a radio frequency.
18. Webster's Dictionary provides several definitions for the word star, beginning with "any of the heavenly bodies, except the moon," appearing in the night sky. Other definitions include a five or six-pointed figure used as a badge or mark of excellence; a person celebrated in some art of profession; a prominent actor or singer; and, as a verb, "to shine as a star; be brilliant or prominent."

CONCLUSIONS OF LAW
1. A party seeking a preliminary injunction must demonstrate, first, "(1) some likelihood of succeeding on the merits; (2) that it has `no adequate remedy at law' and will suffer `irreparable harm' if preliminary relief is denied." Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 11 (7th Cir.1992) (citing Lawson Prods., Inc. v. Avnet, Inc., 782 F.2d 1429, 1433 (7th Cir.1986) and Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 387-87 (7th Cir.1984). Where these threshold tests are met, the court must consider (3) irreparable harm to the non-moving party if preliminary relief is granted, "balancing that harm against the irreparable harm to the moving party if relief is denied;" and (4) the interests of the public. Abbott, 971 F.2d at 11-12 (citing Lawson Prods., 782 F.2d at 1433; Roland Mach., 749 F.2d at 387-88.). The court then "`weighs' all four factors in deciding whether to grant the injunction, seeking at all times to `minimize the costs of being mistaken.'" Id. at 12 (citing American Hosp. Supply Corp. v. Hospital Prods. Ltd., 780 F.2d 589, 593 (7th Cir.1986)).
2. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides for civil liability for any person who "uses in commerce any word, term, name [or] symbol ... which 
(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval or his or *901 her goods, services, or commercial activities by another person, or
(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her ... services, or commercial activities."
15 U.S.C. § 1125(a).
3. Plaintiff can establish a reasonable likelihood of success on its trademark infringement claim by demonstrating (a) that its STAR 105.5 mark is valid and legally protectable; (b) that Plaintiff owns the mark; and (c) that Defendants' use of the "STAR 107.9" mark is likely to create confusion. See Opticians Ass'n of American v. Independent Opticians of America, 920 F.2d 187, 192 (3rd Cir.1990) (citing Pedi-Care, Inc. v. Pedi-A-Care Nursing, Inc., 656 F.Supp. 449, 453 (D.N.J.1987); Holiday Inns, Inc. v. Trump, 617 F.Supp. 1443, 1464 (D.N.J. 1985)).
4. "The key to a showing of trademark infringement ... or unfair competition is a likelihood of confusion, deception or mistake." Spraying Systems Co. v. Delavan, Inc., 975 F.2d 387, 392 (7th Cir.1992) (citing James Burrough, Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 274 n. 16 (7th Cir.1976) and 1 J. Thomas McCarthy, TRADEMARK UNFAIR COMPETITION, § 2:3, at 54 (2d ed. 1984)). Likelihood of confusion need not be assessed unless the claimed mark is "sufficiently distinctive to warrant prima facie protection as a trademark." Spraying Systems, 975 F.2d at 392 (quoting Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc., 781 F.2d 604, 610 (7th Cir. 1986)).
5. In determining whether a mark is entitled to protection, the court should first classify the mark as "generic, descriptive, suggestive or arbitrary." Spraying Systems, 975 F.2d at 392 (citing Blau Plumbing, 781 F.2d at 609). Generic words  the names of the products themselves  are not entitled to trademark protection. Id. Words that describe the product warrant trademark protection only if they have acquired secondary meaning. Id. Words or descriptions that are fanciful or arbitrary are favored. Id. Indeed, a suggestive or arbitrary term may be protected even without having acquired secondary meaning. Miller Brewing Co. v. G. Heileman Brewing Co., 561 F.2d 75, 79 (7th Cir.1977), cert. denied, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978).
6. Secondary meaning is described as a showing that "the primary significance in the minds of the consuming public is not the product but the producer." Green v. G. Heileman Brewing Co., 755 F.Supp. 786, 789 (N.D.Ill.1991) (citing Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 119, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938); see also M.B.H. Enters., Inc. v. WOKY, Inc., 633 F.2d 50, 54 (7th Cir.1980) (a slogan having secondary meaning "separate[s] those goods or services from others in the public consciousness")). Secondary meaning may be established through "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." Spraying Systems, Inc., 975 F.2d at 393 (citing Echo Travel, Inc. v. Travel Ass'n, Inc., 870 F.2d 1264, 1267 (7th Cir. 1989) and Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366, 380 (7th Cir.), cert. denied, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).
7. Under Illinois law, Plaintiff's registration of the "STAR 105.5 RADIO" as an Illinois trademark is prima facie evidence of the validity of the mark. Thompson v. Spring-Green Lawn Care Corp., 126 Ill. App.3d 99, 81 Ill.Dec. 202, 466 N.E.2d 1004 (1st Dist.1984); Mr. Travel, Inc. v. V.I.P. Travel Service, Inc., 268 F.Supp. 958, 961 (N.D.Ill.1966). Even assuming, for purposes of this decision, that Plaintiff's failure to obtain federal registration of its mark deprives Plaintiff of a prima facie showing of validity, Plaintiff has adequately established the enforceability of its mark as against Defendants. First, this court concludes that the word "star" is not descriptive of radio broadcast and promotion services. Indeed, Defendants conceded that the word "star" does not have a descriptive quality for radio services in terms of a particular format  as do "rock" or "light" or "EZ," as examples. Defendants contend, however, that the word "star" is descriptive of the aspiration of a radio station *902 to be a leader, or to enjoy singularly outstanding, celebrated status. This contention itself demonstrates the suggestive rather than descriptive quality of the word "star" as used by the parties. "If [a mark] stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." Money Store v. Harriscorp Finance, Inc., 689 F.2d 666, 673-74 (7th Cir. 1982) (quoting A. Seidel, S. Dalroff, and E. Gonda, TRADEMARK LAW AND PRACTICE, § 4.06, at 77 (1963)).
8. Even assuming that the word "star" is deemed descriptive, Plaintiff has made an adequate showing that its mark has obtained secondary meaning within the northwest suburban area where Plaintiff broadcasts. Robert Watson, who advertises on and listens to WSZR, knows the station as "STAR" or "STAR 105.5." David Nelson, a radio professional, confessed that he himself does not recall Plaintiff's call letters, and knows the station only as "STAR 105." In addition, Mr. Nelson presented evidence that other listeners in Barrington similarly know the station's name but not its call letters.
9. Other factors support the conclusion that Plaintiff's mark has secondary meaning. Credible evidence establishes that, until Defendants' recent purchase of WYSY, no other station broadcasting in the Chicago area has used the word "Star," followed by the station frequency, as a name or tag. Use by "The Fox 94.3" of the ABC/SMN "Starstation" format does not cast doubt on this conclusion; references to "Starstation" by Fox were to its network or format, not to its own station, which has an established name and identity. Plaintiff has used its mark for more than two years, broadcasting that name at least twelve times per hour and "pushing" it via promotional materials such as coffee cups, refrigerator magnets, and the like. Plaintiff estimates its expenditures to promote the "STAR 105.5" mark at $92,000.00 and suggests this is a substantial investment for a broadcasting firm of its size.
10. Having first used the suggestive term "Star" in the particular market  the market for radio broadcasting in the northwest suburbs of Chicago  Plaintiff is entitled to exclusive use of the mark. Walt-West Enterprise, Inc. v. Gannett Co., 695 F.2d 1050 (7th Cir.1982).
11. The test of trademark infringement under the Lanham Act and under Illinois law is likelihood of confusion. James Burrough Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 274 (7th Cir.1976). Here, Plaintiff introduced some minimal evidence of actual listener confusion: After hearing Defendants' broadcast and use of the "Star" name, Bob Karraker, a student who worked for Plaintiff briefly, called Plaintiff's business manager and asked whether Plaintiff had purchased another station. Since reliable evidence of confusion is difficult to obtain in trademark cases, any such evidence is deemed "substantial evidence" that confusion is likely. Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 612 (7th Cir.1965). A showing of actual confusion is not necessary to establish infringement, however. The test is simply "likelihood of confusion." Tisch Hotels, 350 F.2d at 611.
12. The court's conclusion on the likelihood of confusion is a finding of fact. Forum Corp. of North American v. Forum, Ltd., 903 F.2d 434, 438 (7th Cir.1990). The Seventh Circuit has identified seven specific factors:
The degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and an intent on the part of the alleged infringer to palm off his products as those of another.
McGraw-Edison Co. v. Walt Disney Productions, 787 F.2d 1163, 1167-68 (7th Cir.1986) (quoting Helene Curtis Industries, Inc. v. Church & Dwight Co., 560 F.2d 1325, 1330 (7th Cir.1977), cert. denied, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978) (citations omitted)). In this case, the allegedly infringing mark  "Star 107.9"  is similar in form, spelling, and sound to Plaintiff's "Star 105.5," and Defendants' station is very close to Plaintiff's on the radio dial. Mr. Nelson testified credibly that the average listener is not likely to maintain a precise recollection of *903 call letters or frequencies. Testimony of Mr. Nelson and Mr. Watson, who listen to WZSR, suggests the mark is a strong one in the northwest suburban market. Under these circumstances, an ordinary consumer or listener is likely to be confused by Defendants' use of "Star 107.9."
13. Defendants, as the second user of the "Star" name, bear the burden of choosing a mark that will avoid confusion. Forum Corp., 903 F.2d at 440-41 (reversing denial of injunctive relief where trial court placed burden on plaintiff, which was first in marketplace); Union Carbide Corp. v. Ever-Ready Inc., 531 F.2d 366 (7th Cir.1976), cert. denied, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Even absent any fraudulent intent, under Illinois law a latecomer to the market has a duty to take affirmative precautions sufficient to make confusion in the use of similar service marks improbable. Thompson v. Spring-Green Lawn Care Corp., 126 Ill.App.3d 99, 111, 81 Ill.Dec. 202, 212, 466 N.E.2d 1004, 1014 (1st Dist.1984) (citing Jewel Tea Co. v. Kraus, 187 F.2d 278 (7th Cir.1950). The fact that Defendants here had no knowledge of Plaintiff's existence until after it had begun operations or had no intention of harming Plaintiff is not controlling. Thompson, 126 Ill.App.3d 99, 112, 81 Ill.Dec. 202, 213, 466 N.E.2d 1004, 1015 (citing Koebel v. Chicago Landlords' Protective Bureau, 210 Ill. 176, 71 N.E. 362 (1904)).
14. Plaintiff's common law unfair competition claim and its claim under the Illinois Trademark Act are "absorbed in a finding" in its favor on the Lanham Act trademark infringement claim. James Burrough Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 264-75 n. 16 (7th Cir.1976). Plaintiff has shown that it is likely to prevail on the merits of these claims, as well.
15. In trademark infringement cases, the court may presume that irreparable injury will result where there is a likelihood of proving consumer confusion. Helene Curtis Industries, Inc. v. Church and Dwight Co., 560 F.2d 1325, 1330 (7th Cir. 1977); Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 505 (8th Cir. 1987) (citation omitted); Bonner v. Westbound Records, Inc., 49 Ill.App.3d 543, 551, 7 Ill.Dec. 409, 415, 364 N.E.2d 570, 576 (1st Dist.1977). Here, Plaintiff contends that confusion on the part of listeners who complete Arbitron "diaries" may result in Plaintiff's failure to receive credit for its listenership. Because of the importance of Arbitron ratings in selling advertising time, Plaintiff urges that this evidence itself demonstrates that irreparable injury may result from customer confusion.
16. Defendants have not shown that they will suffer irreparable harm if preliminary relief is granted. Although they urge that they have incurred significant expense in gearing up to promote the "Star" mark, the record indicates that at least a significant portion of that expense  including, for example, the expense of a consumer survey  was incurred after Defendants were on notice of Plaintiff's claim. The record suggests, further, that Defendants' inability to use its chosen mark need not impair Defendants' competitive strength. Defendants remain free to choose from the lexicon of terms that may function as descriptive or suggestive marks. Moreover, Mr. Disney testified that, in spite of having been barred by this court's temporary restraining order from use of the name "Star," Defendants have already been able to command higher prices for advertising time than did WYSY's previous owners.
17. A balance of the equities favors Plaintiff. For more than two years, Plaintiff has made a substantial investment in establishing and promoting its mark. At least some authority suggests that enjoining further use of an infringing mark, before that mark has attained success, may be a "kindness" in that the enjoined party is spared potential further challenges to its mark. See Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd., 662 F.Supp. 203, 206 (S.D.N.Y.1987) (quoting George Washington Mint, Inc. v. Washington Mint, Inc., 349 F.Supp. 255, 263 (S.D.N.Y.1972)). In any event, as Plaintiffs urge, Defendants should have known at the time they began using the "Star" mark of Plaintiff's competing use; they therefore acted at their peril that their own use would be enjoined. See Atari, Inc. v. North American Philips Consumer Electronics Corp., 672 *904 F.2d 607, 620 (7th Cir.), cert. denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982); Helene Curtis Indus., Inc. v. Church & Dwight Co., 560 F.2d 1325, 1333-34 (7th Cir. 1977), cert. denied, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978).
18. The public interest will not be disserved by entry of a preliminary injunction. Depriving Defendants of the use of "STAR" name need not limit listener access to Defendants' programming. Defendants remain free to broadcast under any desired name that does not infringe.

DISCUSSION
As more fully described in the findings and conclusions set out above, Plaintiff has demonstrated that it has a substantial likelihood of prevailing on the merits of its claims under the Lanham Act and under its related state law claims. Irreparable harm may be presumed here; in addition, Plaintiff has presented evidence that consumer confusion may result in inaccurate crediting of its station by Arbitron, the rating service that plays a significant role in determining a radio station's appeal for advertisers. Defendants are poised to make a significant and costly entry into the market using the "Star" name. They have not, however, demonstrated that the harm they will suffer from being preliminary enjoined from use of that name exceeds the harm of denial of an injunction for Plaintiff, whose use of the name is established and whose mark is registered.
In light of the parties' need for prompt resolution of this motion, time does not permit a complete and thorough discussion of each argument raised. Two significant issues should be addressed, however. First, Defendants argue that others in the market-place are using the "Star" name and that Plaintiff's use is, therefore, not exclusive. There is no evidence, however, that any other broadcaster in the Chicago area is using the word "Star," followed by its frequency, as a "name" or "tag." Significantly, the relief recommended here would not, as Defendants warn, deprive any broadcaster in the Chicago area of the use of the word "star." Plaintiff's counsel candidly suggested that uses of the word other than as a name or "tag" for Defendants' radio station might not be objectionable.
Second, Defendants urge that the Seventh Circuit's holding in M.B.H. Enterprises, Inc. v. WOKY, Inc., 633 F.2d 50 (7th Cir.1980) requires that Plaintiff's petition be denied. In M.B.H., the court considered plaintiff's federally registered radio service mark, "I LOVE YOU," which plaintiff had licensed to a Milwaukee radio station for broadcast as "I LOVE YOU MILWAUKEE." When defendant WOKY began a similar promotional campaign, broadcasting such expressions as "WOKY LOVES MILWAUKEE" and "ROBB EDWARDS [a WOKY disk jockey] LOVES MILWAUKEE," plaintiff sought an injunction under the Lanham Act. The court concluded that defendant's use of the "love" expression was descriptive. It noted that WOKY's call letters, and not the slogan, were used by defendant to identify itself to the public. 633 F.2d at 52. WOKY quite properly used the "love" slogan as a description of its affection for the community and its responsibility "to care for and serve its community well." Id. at 55.
In contrast to the situation before the court in M.B.H., the issue here is not a description, but a name. Plaintiff has used the "STAR 105.5" mark over many months, has registered the mark, and has made substantial efforts to promote an identification among the listening public of its radio station with "STAR." Defendants adopted a confusingly similar mark and proceeded to broadcast that mark even after being notified of Plaintiff's objection. This court should enter a preliminary injunction on the same terms as the temporary restraining order and should require Plaintiff to post appropriate security.
Date: January 26, 1994
Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable Harry D. Leinenweber. See FED.R.CIV.P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. Egert v. Connecticut General Life Ins. Co., 900 F.2d 1032, 1039 (7th Cir.1990).
NOTES
[1] Included are Cook, DuPage, Grundy, Kane, Kendall, Lake, McHenry, and Will Counties in Illinois, Kenosha County in Wisconsin, and Lake and Porter Counties in Indiana.