**BLAU PLUMBING, INC.,**
**Plaintiff-Appellant,**

v.

**S.O.S. FIX–IT, INC., d/b/a A–AAAA-**
**BAAB's Root Rodders,**
**Defendant-Appellee.**

No. 85–2475.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1985.

Decided Jan. 14, 1986.

Richard S. Marcus, Godfrey & Kahn, Milwaukee, Wis., for plaintiff-appellant.

James E. Bauman, Michael, Best & Friedrich, Milwaukee, Wis., for defendant-appellee.

Before BAUER and POSNER, Circuit Judges, and GRANT, Senior District Judge.[*]

POSNER, Circuit Judge.

The parties to this trademark suit are competing providers of sewer and drain cleaning services to consumers in Milwaukee. Blau, the plaintiff, alleges that S.O.S., the defendant, infringed Blau's "trade dress" in a "location box" which appears in the plaintiff's advertisement in the Yellow Pages, thereby violating section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). A pendent claim charges violation of Wisconsin's false-advertising law. The district judge, finding no merit in either claim, granted S.O.S.'s motion for summary judgment, and Blau has appealed.

Here is Blau's advertisement:

---

[*] Hon. Robert A. Grant, of the Northern District of Indiana, sitting by designation.

RESIDENTIAL-COMMERCIAL-INDUSTRIAL 24 HOUR 7-DAY SERVICE

a **Redi Rooter**

**EXPERT SEWER & DRAIN CLEANING**

SEWERS • SINKS • STOOLS • DRAINS • TUBS • LAVATORIES … ANYTHING!

## 476-3100

SUDDEN SERVICE TO

| NORTH | SOUTH | EAST | WEST |
|---|---|---|---|
| 35TH & NORTH 27TH & CAPITOL 64TH & VILLARD | 15TH & GREENFIELD 27TH & OKLAHOMA LAYTON & HOWELL | COLLEGE & PACKARD FARWELL & NORTH CALUMET & PORT RD. | 104TH & LINCOLN 79TH & BLUEMOUND 64TH & LINCOLN |
| 476-3100 | 258-4262 | 476-3246 | 258-4040 |

WI. M.P. 3836

CALL FOR EXACT SERVICE COST
LOW RATES ■ NO HOURLY CHARGE
SENIOR CITIZEN DISCOUNT
DIV. OF BLAU PLUMBING INC.

The rectangle divided into segments labeled "North," "South," "East," and "West," with street intersections and phone numbers in each section, is the location box. Contrary to appearances, the intersections are not addresses of Blau service locations, and the different phone numbers ring in the same place, from which Blau dispatches its trucks to consumers who phone in for service. The location box divides the city into quadrants identified not only by compass point but also by major intersections, known to the consumer. The consumer glances at the box, recognizes from his proximity to one of the intersections which quadrant he is in, and calls the corresponding phone number for service. Blau may be trying to create the illusion that it has dispatch points at each intersection, thus assuring prompt service; if so it is deceiving consumers; but this point has not been pursued, no doubt because S.O.S. is engaged in the same little deception.

Here now is S.O.S.'s advertisement:

# ROOT RODDERS™ SEWER & DRAIN CLEANING
## EMERGENCY 24 HR. SERVICE

# HELP!

? FLOOR DRAINS
• SINKS
? TUBS

**462-4711**

EVENINGS AND
WEEKENDS
CALL 462-2222

| NORTH | SOUTH | EAST | WEST |
|---|---|---|---|
| 27th & Capitol 35th & North 60th & Brown Deer | 35th & National Layton & Howell 27th & Forest Home | Silver Spring & Port Rd. Farwell & North College & S Lake Dr. | 108th & Bluemound 84th & Lincoln Calhoun & Greenfield |

S·O·S
FIX-IT

certified maintenance authority for happy homes A·Assababa's Root Rodder's

Again there is a location box, and it is the same size as Blau's and has the same directions in the same order reading from left to right (though it is the order that any person asked to name the cardinal points of the compass would use) and the same number of intersections. Moreover, five of the intersections are identical to Blau's, while several others have one street or avenue in common with an intersection in Blau's box. S.O.S. lists only one phone number but again the impression is created of multiple dispatch points. S.O.S. does not deny having copied Blau's location box and there is some, though weak, evidence that some consumers have confused the two firms, which are as we have said competitors and appear in the same section of the Yellow Pages.

■ Blau insists that it is claiming an infringement of "trade dress," not "trademark," but there is probably no substantive legal difference between these terms, and certainly none that helps Blau. It is of course true that section 43(a) of the Lanham Act is not limited to trademark infringement. In fact it does not mention trademarks. It provides a remedy for trademark infringement only because that is a type of unfair competition, and it provides a remedy for other types as well. "Trade dress," a commonly used term in the law of unfair competition, denotes the form in which a producer presents his brand to the market; thus a label, a package, even the cover of a book might be trade dress. See, e.g., 1 McCarthy, Trademarks and Unfair Competition § 8:1 (2d ed. 1984). If a seller adopts a trade dress confusingly similar to a competitor's, this is unfair competition actionable under section 43(a). See *id.* at pp. 284–85.

■ Because the statute is not limited to trademark infringement and in any event protects unregistered (common law) trademarks as well as federally registered trademarks, courts have generally not thought it important whether trade dress is a form of trademark; but it is, as Blau implicitly acknowledges by its heavy reliance on *Chevron Chemical Co. v. Volun-*

*tary Purchasing, Inc.*, 659 F.2d 695 (5th Cir.1981). The plaintiff's trade dress in that case consisted of its registered trademark (the brand name) plus the distinctive design that formed the background on which the name was printed on the package in which the plaintiff's product was sold to the consumer. Hence the suit was essentially one to enforce a common law trademark in an ensemble consisting of the trade name and the background design. The court of appeals applied the principles of trademark law, see *id.* at 702, prompting one commentator to remark that the case "brought trade dress cases into the mainstream of trademark law." 1 McCarthy, *supra*, at 287. See also *CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1011–12 (Fed.Cir.1985); *University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1541 and n. 14 (11th Cir.1985); *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985); *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 425 n. 3 (5th Cir.1984); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980–81 and n. 25 (11th Cir.1983).

■ And high time. Labels should not determine rights. It would not do to give Blau more protection for its location box conceived as "trade dress" than it would be entitled to if the box were called a common law trademark. Some cases, it is true, hold that in a trade dress case the plaintiff must always prove secondary meaning, rather than just when the trade dress is descriptive, which is the rule in a conventional trademark case. See, e.g., *Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 652 F.2d 299, 303–04 (2d Cir.1981). But these holdings may just reflect the fact that trade dress may be undistinctive without being descriptive; in such a case "secondary meaning" may be a synonym for "distinctive." If any of these cases stands for the broader proposition that secondary meaning must be shown even if the trade dress is a distinctive, identifying mark, then we think they are wrong, for the reasons explained by Judge Rubin for the Fifth Circuit in *Chevron*. At all events, decisions

that impose a heavier burden of proof on plaintiffs in trade dress cases than in conventional trademark cases cannot help Blau.

■ The goal of trademark protection is to allow a firm to affix an identifying mark to its product (or service) offering that will, because it is distinctive and no competitor may use a confusingly similar designation, enable the consumer to discover in the least possible amount of time and with the least possible amount of head-scratching whether a particular brand is that firm's brand or a competitor's brand. *W.T. Rogers Co. v. Keene*, 778 F.2d 334 (7th Cir.1985); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423 (7th Cir.1985). The mark need not be the name of the brand; it need not even be a word; it can be a slogan, a symbol, a combination of words and symbols, an ornamental feature, a distinctive shape, or something else intended to remind the consumer of the brand. See 1 McCarthy, *supra*, ch. 7.

■ But it is no purpose of trademark protection to allow a firm to prevent its competitors from informing consumers about the attributes of the competitors' brands. That is why trademarks that are fanciful (i.e., made up, like "Kodak" or "Exxon"), or arbitrary (e.g., "Black & White" scotch), or suggestive (e.g., "Business Week," "Coppertone") are favored, why generic words (names of products rather than brands—"airplane," for example, or "decaffeinated coffee") may not be trademarked at all, and why descriptive words (e.g., "bubbly" champagne) may be trademarked only if they have acquired secondary meaning, that is, only if most consumers have come to think of the word not as descriptive at all but as the name of the product ("Holiday Inn," for example). See the helpful discussion in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–11 (2d Cir.1976) (Friendly, J.). To allow a firm to use as a trademark a generic word, or a descriptive word still understood by the consuming public to describe, would make it difficult for competitors to market their own brands of the same prod-

uct. Imagine being forbidden to describe a Chevrolet as a "car" or an "automobile" because Ford or Chrysler or Volvo had trademarked these generic words, or an after-shave lotion as "bracing" because the maker of one brand of aftershave lotion had trademarked this descriptive word.

Thus if Blau adopted as its trademark the slogan, "We serve all of Milwaukee," it would have to prove secondary meaning. For that is a descriptive slogan, which anyone who serves all of Milwaukee should be free to use unless (improbably) consumers came to identify the slogan with Blau Plumbing Company. Otherwise it would be very difficult for city-wide competitors of Blau to convey to the consumer the fact that they, too, provide service city-wide. Maybe there is a class of slogans so indispensably informative that, by analogy to generic words, i.e., product names, they can never be appropriated. We need not pursue that question here. On the trademarking of slogans generally see 1 McCarthy, *supra*, § 7:5.

The location box is a schematic, graphic, or metaphoric representation of the hypothetical slogan. Instead of Blau's saying that it serves all of Milwaukee it says that it serves north, south, east, and west—all the cardinal points of the compass—and it gives intersections so that the consumer can figure out which quadrant he is in. Though schematic, it is descriptive; it amounts to saying, here are the four parts of Milwaukee—we serve all four. Competitors should be free to say, we serve the same four parts. And they should be free to say it in a way that facilitates comparison by consumers. S.O.S. should not be forced, by an overgenerous interpretation of Blau's trademark rights, to say in its advertisement, "We serve the cardinal points of the compass, too," or, "We serve every place Blau does." It should be able to say, just like Blau, that it serves north, south, east, and west, and it should be able to define those zones by reference to major intersections, just like Blau.

■ Blau cannot appropriate the English language, and by doing so render a compet-

itor inarticulate. The location box is a kind of language, code, or map that facilitates comparison shopping. The record contains a number of advertisements from the Yellow Pages that have location boxes, though no sewer and drain cleaner has one quite so like Blau's as S.O.S.'s is. Although maps, directories, guide books, computer graphic designs, and other materials generically related to location boxes are copyrightable, see, e.g., *Rockford Map Publishers, Inc. v. Directory Service Co.*, 768 F.2d 145 (7th Cir.1985); *Midway Mfg. Co. v. Artic Int'l, Inc.*, 704 F.2d 1009 (7th Cir.1983), Blau has not attempted to copyright its location box; it has not sought a reward for its efforts or ingenuity in "mapping" Milwaukee in the way it has done. Its claim to a property right stands or falls on its right to use the location box as an identifying symbol, and this it cannot do if the result would be to set up a barrier to its competitors' providing information about their own service offerings.

 Blau might have tried to show that consumers had come to think of the location box as Blau's symbol rather than as a source of information about service areas, as much so as if the points of the compass had been in Greek and the intersections in Runic. Then competitors would not be denied access to an essential aid to informing their customers about their service. But Blau did not do this; its claim (made in its opening brief in this court) that "whenever a consumer sees a location box similar to the ones in Blau's ads, the consumer immediately thinks of Blau," is unsubstantiated and, in light of the many Yellow Pages advertisements in the record that contain location boxes quite similar to Blau's, fantastic. The fact that some consumers flipping hastily through the Yellow Pages may have called S.O.S. thinking it was Blau doesn't begin to prove that Blau's location box is to consumers the mark or symbol of Blau Plumbing, as the distinctively shaped green bottle is the symbol of Perrier, or as Morris is the symbol of 9 Lives cat food. A glance back at the advertisements will show that Blau does not use the location box to identify itself. It

calls its service "Redi Rooter" and has a little man between the words, an emblem with the name Blau on it, and a row of service trucks. The location box is presented as information (the words "sudden service to" precede. it), not as a symbol or mnenomic designed to fix the firm or its service in the reader's mind. This is description, like the assigned frequency ("FM 107") of the radio station in *Walt-West Enterprises, Inc. v. Gannett Co.*, 695 F.2d 1050, 1059 (7th Cir.1982), not identification. There may be some confusion from S.O.S.'s use of a similar location box, but confusion is endemic to consumer markets; and a court doesn't even reach the question of likelihood of confusion until persuaded that the putative mark is sufficiently distinctive to warrant prima facie protection as a trademark. This one is not.

 It may seem, though, that in stressing the information in the location box we have ignored the box itself—the rectangle that encloses the information. However, simple geometrical shapes cannot be appropriated for use as trademarks without proof of secondary meaning. See, e.g., *Wiley v. American Greetings Corp.*, 762 F.2d 139, 142 (1st Cir.1985); *Application of Hillerich & Bradsby Co.*, 204 F.2d 287 (C.C.P.A.1953). They are too common to be deemed distinctive—brand-identifying—without proof. (We are speaking of the shapes of symbols affixed to the trademarked product, not the shape of the product itself; if that shape is functional, it cannot be appropriated even with proof of secondary meaning. See *W.T. Rogers Co. v. Keene, supra*.) Since there is no proof of secondary meaning, Blau can get no mileage from its rectangle. Maybe, though, to focus on the rectangle itself is wrong, and we should ask simply whether the ensemble consisting of the rectangle and what it encloses is sufficiently distinctive to be given trademark protection in the absence of proof of secondary meaning. See, e.g., *Scandia Down Corp. v. Euroquilt, Inc., supra*, 772 F.2d at 1431; *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir.1984).

It is not. The boxing of information in a Yellow Pages advertisement serves to focus the reader's attention on a body of data and thus performs an informational function that would be impeded by too ready a grant of trademark protection; hence proof of secondary meaning is required, but was not attempted.

 Blau makes much of the fact that S.O.S. actually copied Blau's location box; calls this "passing off"; and argues that it warrants relaxing the standard for whether Blau has a valid trademark. "Passing off" means fraud; it means trying to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off. The copying of a descriptive mark that has not acquired secondary meaning does not imply passing off, for by definition it describes properties which the brand has in common with other brands. So far as appears, S.O.S. merely wanted consumers to understand that it served the same areas as Blau. Such copying informs rather than confuses consumers. In any event, the state of mind of an alleged trademark infringer is more relevant to deciding whether consumers are likely to be confused than whether the trademark is valid; if the infringer thinks they will be confused that is some evidence they will be. See, e.g., *Comidas Exquisitos, Inc. v. O'Malley & McGee's Inc.*, 775 F.2d 260 (8th Cir.1985); *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir.1980). That question doesn't arise unless the trademark is valid; this trademark is not.

Granted, many cases do allow an inference of secondary meaning to be drawn from, or at least bolstered by, evidence that the defendant was deliberately trying to confuse consumers through an exact or nearly exact copying of his trade dress. See, e.g., *CPG Products Corp. v. Pegasus Luggage, Inc., supra*, 776 F.2d at 1012; *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 950 (2d Cir. 1981); *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir.1979);

*Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960). If the defendant thinks that the plaintiff's trade dress has acquired secondary meaning, so that he can confuse consumers by adopting the same or a confusingly similar trade dress for his own brand, this is some indication that it has acquired secondary meaning. The problem is that evidence of intent is often ambiguous. Maybe therefore a court should insist on other evidence of distinctiveness and not allow a trademark infringement case to get to a jury merely on proof that the defendant may have been trying to confuse consumers about whose brand they were buying; maybe that would be putting too much weight on evidence of intent. But in any event Blau as we have said has not attempted to show passing off. Copying is not passing off per se. See, e.g., *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 859–60 (11th Cir.1983). Otherwise the first seller of a product could appropriate the simplest of trade dress, the most elementary of descriptive terms, and therefore make it more costly for the next seller to compete with him. Where as in this case the trade dress being copied is descriptive, copying is consistent with an inference that the copier wanted merely to inform consumers about the properties of his own product or service.

 So the judge was right to dismiss Blau's trademark claim. But he was wrong to go on and decide the merits of Blau's state law claim for false advertising. When the federal claim is dismissed before trial, as it was here, the district court should relinquish jurisdiction of any pendent state law claim, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), unless, of course, there is some basis for jurisdiction of the claim other than pendent jurisdiction. But there isn't here; the parties are not of diverse citizenship. Another exception is where the statute of limitations has run on filing the pendent claim as an independent lawsuit in state court. See, e.g., *Duckworth v. Franzen*, 780 F.2d 645,

656 (7th Cir.1985); *O'Brien v. Continental Illinois Nat'l Bank & Trust Co.*, 593 F.2d 54, 65 (7th Cir.1979). There is no suggestion that this is why the district judge decided to retain the plaintiff's state law claim after dismissing the federal claim; since the plaintiff is primarily seeking injunctive relief against a continuing course of conduct, the absence of any hint of a statute of limitations problem is not surprising.

State law claims should not be retained for adjudication in federal court when the sole remaining basis for federal jurisdiction is the judge-made doctrine of pendent jurisdiction, unless there are pressing reasons for retention; none has been shown here. There is such a reason when the federal claim presents a triable issue, for then pendent jurisdiction allows the parties to escape the costs of a second trial on the plaintiff's state law claim. But that economy is missing when as in this case the federal claim falls out of the case before trial. No other reason has been suggested. The retention of the claim was an abuse of discretion.

Finally, S.O.S. asks us to award it the attorney's fees it incurred in defending this appeal, on the ground that Blau's suit was frivolous. S.O.S. had asked the district judge for an award of attorney's fees incurred in defending this suit in the district court, and had been refused on the ground that the case was not "exceptional." There is a question, unnecessary to resolve here, whether that is the right standard. Section 35 of the Lanham Act, 15 U.S.C. § 1117, indeed allows the judge to award attorney's fees to the prevailing party "in exceptional cases." But section 35 governs suits for infringement of a federally registered trademark, which Blau's location box was not. There is no corresponding provision in section 43(a), which protects unregistered marks. Several circuits, noting that the legislative history of the attorney's fee provision makes no distinction between registered and unregistered marks (see, e.g., H.R.Rep. No. 524, 93d Cong., 1st Sess. 2 (1973)), deem the omission an oversight that they are free to repair. See *Transgro, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1025–26 (9th Cir.1985), and cases cited there. This court has not addressed the issue; we left open a related question, whether the attorney's fee provision in section 35 should be read into section 38 (civil liability for false or fraudulent registration), in *Exxon Corp. v. Exxene Corp.*, 696 F.2d 544, 550–51 (7th Cir.1982).

The issue is doubly irrelevant to our consideration of this appeal. First, if the "exceptional cases" standard of section 35 is not applicable in a case under section 43(a) —if such a case is governed by common law rather than statutory standards for shifting attorney's fees—it would mean of course that the judge could award attorney's fees to a prevailing defendant only if the plaintiff's case were frivolous; and it appears that either the same or an even more demanding standard is applied in cases where the defendant asks for attorney's fees under section 35. See *Arbrook, Inc. v. American Hospital Supply Corp.*, 645 F.2d 273, 278–79 (5th Cir.1981) (an "exceptional cases" case under the identically worded provision in the patent statute, 35 U.S.C. § 285). Second, S.O.S. has not cross-appealed from the district court's denial of attorney's fees. Thus the only issue for us is whether the appeal is frivolous. See Fed.R.App.P. 38. Although Blau's case is weak, the resolution of the case on S.O.S.'s motion for summary judgment, while proper, was sufficiently debatable to prevent us from deeming the appeal frivolous.

The judgment is affirmed, as modified to place dismissal of the plaintiff's state law claim on the ground of lack of jurisdiction rather than lack of merit.

MODIFIED AND AFFIRMED.