**COMMUNITY FIRST BANK Plaintiff and Counter–Defendant**

v.

**COMMUNITY BANKS Defendant and Counter–Plaintiff**

**No. CIV. RDB 04–1359.**

United States District Court, D. Maryland, Northern Division.

March 14, 2005.

Eliot M. Wagonheim, Wagonheim and Tucker LLC, Towson, MD, for Plaintiff.

Lee Baylin, Law Office of Lee Baylin, Towson, MD, for Defendant.

## MEMORANDUM OPINION

BENNETT, District Judge.

This is a trademark infringement action brought by Plaintiff Community First Bank ("CFB") against Defendant Community Banks alleging Maryland state trademark violations. CFB is a small banking institution with a single location in Pikesville, Maryland. Community Banks is a much larger bank based in central Pennsylvania. CFB brought this action after Community Banks expanded its operation into Carroll County, Maryland, and announced its intention to further expand throughout Maryland. Defendant Community Banks has filed a Counterclaim seeking to cancel CFB's Maryland trademarks, and seeking damages. Pending before the Court are cross Motions for Summary Judgment filed by both parties. Both Motions were fully briefed, and this Court held an extensive hearing regarding those motions on March 4, 2005. For the reasons that follow, Defendant Community Banks' Motion for Summary Judgment will be GRANTED as to Plaintiff's trademark infringement claims and partially GRANTED as to Defendant's Counterclaims. Plaintiff CFB's Motion for Partial Summary Judgment will be DENIED as to its infringement claims, and GRANTED as to the damages sought in Defendant's Counterclaim.

## I. *Background*

Defendant Community Banks was founded in 1998, as a result of a merger between Peoples State Bank and Community Banks, Inc. Community Banks, Inc., existed for some time prior to the 1998 merger as a Pennsylvania-based banking institution. Peoples State Bank also operated in Pennsylvania, although the Peoples State Bank name was dropped as a result of the merger. Currently, Community Banks, a subsidiary of Community Banks, Inc., has more than forty-seven branches throughout Pennsylvania. In November of 2002, Community Banks opened a drive-thru banking location on Hanover Pike in Manchester, Maryland. Shortly thereafter, Community Banks opened a full-service location in Westminster, Maryland. Both of these locations are in Carroll County. The Carroll County branches represented the "initial phase" of Community Banks' anticipated expansion into Maryland. (Pl.'s Opp. & Mot. Partial Summ. J. Ex. 8.)

CFB was formed in 1998 by Malcom Berman, Michael Shomper, and William Gisreal. CFB has one full-service banking branch, located on Old Court Road in Pikesville, Maryland. From the time that CFB opened, until after this action was brought, CFB concentrated most of its marketing in local media in Baltimore County, Maryland (Baker Dep. at 52), and garnered most of its deposits from custom-

ers in Baltimore County (Shomper Dep. at 11, 23).

CFB was concerned about Community Banks' plans to expand into Maryland, in light of the potential for confusion resulting from the similarity between the names of the two institutions. Consequently, on January 2, 2003, CFB registered the following marks with Maryland's Secretary of State: (1) the textual mark of "Community First Bank"; (2) the stylized mark of "CFB Community First Bank"; and (3) the stylized mark of "CFB." In its registration statements, CFB claims that the marks have been in use by the company since April of 1998. (*See* Pl.'s Compl. Ex.'s 1–3.) CFB did not seek to register the marks with the federal government. Defendant Community Banks has not attempted to register any trademarks with any state or federal authority.

When Community Banks opened its Maryland branches, it engaged in a brief advertising campaign. That campaign included advertisements which aired on a radio station based in Carroll County, Maryland, the signal of which extends to the Baltimore metro area. (Keffer Dep. at 17–19.) Community Banks also published an advertisement for its certificate of deposits in the Baltimore *Jewish Times* in December of 2003. CFB is a major advertiser in the *Jewish Times*, which enjoys a wide circulation in Pikesville. CFB contends that the Community Banks' advertisements in that newspaper created confusion on the part of its customers. CFB also contends that customer confusion resulted from a billboard advertisement erected, in the summer of 2003, by Community Banks on Maryland Route 140, which runs from Pikesville to Westminster.

On March 10, 2004, CFB filed a Petition for Permanent and Interlocutory Injunction in the Circuit Court for Baltimore County alleging Maryland trademark infringement. On April 27, 2004, Community Banks filed a Notice of Removal to this Court based on the complete diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332(a). On May 17, 2004, Defendant Community Banks filed an Answer and a Counterclaim. In its Counterclaim, Community Banks seeks to cancel the three Maryland trademarks that form the basis of Plaintiff's action. Community Banks also seeks $150,000 in money damages.

In September of 2004, six months after this action was filed, CFB ran ads in the *Carroll County Times* in an effort to expand into the Carroll County market. (Shomper Dep. at 11–14.) The ads specified neither CFB's address nor its location. (Baker Dep. at 55.) Rather, only CFB's telephone number was included in the advertisements. (Baker Dep. at 55.) Two days before the CFB ads were to run, CFB Senior Vice President Karen Baker sent a memo to CFB employees alerting them to the likelihood that telephone calls expressing confusion about the two banks could be expected as a result of the ads. (Def.'s Mem. Supp. Summ. J. Ex. 4; McPherson Dep. at 55.) Baker also required each employee to record such confusion in folders labeled "CommunityBanks," which were distributed to all employees for that purpose. (Def.'s Mem. Supp. Summ. J. Ex. 4; McPherson Dep. at 55.) Thereafter, according to various Community Banks' employees, several customers came into Community Banks' branches seeking to take advantage of the CFB advertised certificate of deposit rates. This happened about 50 times in the period during which the ads ran. (Lopez Dep. at 7.)

On January 18, 2005, Defendant Community Banks filed its Motion for Summary Judgment as to Plaintiff's claims and as to its Counterclaim, contending

that CFB's trademarks are invalid as a matter of law. On January 31, 2005, Plaintiff CFB filed a Motion for Partial Summary Judgment as to its trademark infringement action arguing that there is no genuine issue as to the validity of its trademarks or as to Community Banks' infringement thereof. CFB submits that the only remaining triable question is the geographic boundaries of its operating area.

## II. *Standard of Review*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (emphasis added). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249, 106 S.Ct. 2505. In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

However, "[w]hen the moving party has met its responsibility of identifying the basis for its motion, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1987) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e)). Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Similarly, the existence of a mere "scintilla" of evidence in support of the nonmoving party's case is insufficient to preclude an order granting summary judgment. *Id.* at 252, 106 S.Ct. 2505. Furthermore, district courts have an "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (*citing Celotex Corp.*, 477 U.S. at 323–24, 106 S.Ct. 2548).

When, as here, both parties file motions for summary judgment the court applies the same standards of review. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve issues of material facts on a motion for summary judgment—even where ... both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on

an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F.Supp. 170, 172 (D.Md.1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman,* 380 F.2d 323, 325 (10th Cir.1967); *see also McKenzie v. Sawyer,* 684 F.2d 62, 68 n. 3 (D.C.Cir.1982) ("neither party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non-existence of a factual dispute." *Shook v. United States,* 713 F.2d 662, 665 (11th Cir.1983).

## III. *Discussion*

 Plaintiff's action is based upon its allegation that, by expanding its operation into Maryland, Community Banks infringed upon CFB's registered Maryland trademarks. Trademark infringement under Maryland law is governed by MD. CODE ANN., Business Regulations § 1–414 (2004). Because this case was brought before this Court based upon diversity jurisdiction, the substantive laws of the forum state, Maryland, apply. *Miller v. Bristol–Myers Squibb Co.,* 121 F.Supp.2d 831, 836 (D.Md. 2000) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). However, the Maryland courts have recognized that "trademark infringement cases under either the Maryland statute or the [federal] Lanham Act [15 U.S.C. §§ 1051 *et seq.*] are based on the same legal theory and require the same proof." *Mid South Bldg. Supply of Mary-*

*land, Inc. v. Guardian Door and Window, Inc.,* 156 Md.App. 445, 460, 847 A.2d 463, 471–72 (Md.App.2004); *accord Sterling Acceptance Corp. v. Tommark, Inc.,* 227 F.Supp.2d 454, 460 (D.Md.2002) (holding that the same legal standards and analysis apply to cases brought under Maryland and federal trademark infringement statutes). Therefore, to prevail on its claim for trademark infringement, Plaintiff CFB must demonstrate: (1) that it has a valid, protectable trademark; and (2) that Defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 930 (4th Cir.1995).

As discussed below, the Court finds that Plaintiff's trademarks are generic, and that the issue of infringement therefore need not be reached. In addition, the Court finds that, even assuming, for the sake of argument, that Plaintiff's marks were held to be descriptive, Plaintiff's claim fails because Plaintiff has failed to establish secondary meaning.

### A. *Validity of Plaintiff's Trademark*

 The question of whether Plaintiff has a valid, protectable trademark depends upon whether the mark is sufficiently distinctive to warrant trademark protection. As the United States Court of Appeals for the Fourth Circuit recently recognized, the function of a trademark is to " 'identify and distinguish' " the goods or services sold by one business from the goods or services of another. *Retail Services, Inc. v. Freebies Publishing,* 364 F.3d 535, 538 (4th Cir.2004) (quoting 15 U.S.C. § 1127 (West Supp.2003)). The standards for determining "distinctiveness" are well settled. In determining whether a particular mark is sufficiently distinctive to warrant trademark protection, courts look to the following four categories, which constitute

a continuum ranging from least distinctive to most distinctive: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Retail Services,* 364 F.3d at 538 (applying the analytic model advanced by United States Circuit Judge Henry J. Friendly in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976)).

■■■ Generic marks are the least distinctive because those marks merely describe a general category of goods or services. *U.S. Search, LLC v. U.S. Search. com Inc.,* 300 F.3d 517, 523 (4th Cir.2002). For instance, "[i]magine being forbidden to describe a Chevrolet as a 'car' or an 'automobile' because Ford or Chrysler or Volvo had trademarked these generic words.'" *Retail Services,* 364 F.3d at 538 (quoting *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.,* 781 F.2d 604, 609 (7th Cir.1986)). No trademark protection can be afforded to such marks because, "if a business were permitted to appropriate a generic word as its trademark, it would be 'difficult for competitors to market their own brands of the same product.'" *Retail Services,* 364 F.3d at 538 (quoting *Blau Plumbing, Inc.,* 781 F.2d at 609).; *see also A. & H. Transp., Inc. v. Save Way Stations, Inc.,* 214 Md. 325, 333, 135 A.2d 289, 293 (Md. 1957) (recognizing that generic marks are not subject to trademark protection).

■■■ On the opposite end of the spectrum are fanciful or arbitrary marks, which are inherently distinctive. *Retail Services,* 364 F.3d at 538. Fanciful marks can generally be described as "made-up words expressly coined for serving as a trademark." *Sara Lee Corp. v. Kayser–Roth Corp.,* 81 F.3d 455, 464 (4th Cir. 1996). Some examples of fanciful marks include "Clorox®, Kodak®, Polaroid®, and Exxon®." *Id.* Arbitrary marks consist of commonly-used words which are employed in connection with products for which "they do not suggest or describe any quality, ingredient, or characteristic." *Retail Services,* 364 F.3d at 539 (quoting *Sara Lee Corp.,* 81 F.3d at 464). Examples of arbitrary marks include "Camel® cigarettes" and "Apple® computers." *Sara Lee Corp.,* 81 F.3d at 464.

■■■ Suggestive and descriptive marks appear in the middle of the "distinctiveness continuum." Suggestive marks are generally held to be distinctive because such marks "connote, without describing, some quality, ingredient, or characteristic of the product." *Id.* at 464. "Coppertone®, Orange Crush®, and Playboy® are good examples of suggestive marks because they conjure images of the associated products" without directly describing the products. *Id.* Comparatively, descriptive marks are less distinctive because they "merely describe a function, use, characteristic, size, or intended purpose of the product." *Id.* (citing as examples "After Tan post-tanning lotion, 5 Minute Glue, King Size men's clothing, and the Yellow Pages telephone directory"). Descriptive marks are only accorded protection if the marks have acquired a "secondary meaning." *Sara Lee Corp.,* 81 F.3d at 464. "Saying that a trademark has acquired 'secondary meaning' is shorthand for saying that a descriptive mark *has become* sufficiently distinctive to establish 'a *mental association* in buyers' minds between the alleged mark and a single source of the product.'" *Retail Services,* 364 F.3d at 539 (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15 (4th ed.2003)) (emphasis original). "Coca–Cola® is probably the paradigm of a descriptive mark that has acquired a secondary meaning." *Sara Lee Corp.,* 81 F.3d at 464.

Here, Defendant Community Banks argues that Plaintiff's marks are generic, or alternatively, that the marks are descrip-

tive and that CFB has failed to adduce sufficient evidence of secondary meaning. For its part, Plaintiff argues that the marks are suggestive.

### 1. *Plaintiff's Marks As Generic*

■ The term "community bank" is commonly used in the banking industry to denote a particular category of banking institution. To wit, the term describes smaller, locally owned institutions which market primarily to individuals and small businesses.[1] The category of "community bank" distinguishes such institutions from larger regional banks, and money center banks, which generally encompass a broader geographic area and are more focused on corporations and institutional investors.

Not surprisingly, many institutions seek to invoke the "community bank" category by using that term within the organization's name. As Defendant notes, according to the directory of the Federal Deposit Insurance Corporation ("FDIC"), the primary insurer of U.S. banks, there are over 500 listings of banks which use the word "community" as part of the bank's name. *See* FDIC Directory *available at http:// www.fdic.gov* (last modified March 11, 2005). Twenty of those institutions use the exact words "community first bank," in that precise order, and forty-six banks use the expression "first community bank" within the institution's name. (Def.'s Mem. Supp. Summ. J. Ex. 6.) Two national organizations purport to represent community banks: American Community Bank-

ers[2] and Independent Community Bankers of America.[3] Defendant also identifies numerous references by the federal government to the term "community bank," in federal regulations and other publications. (*See* Def.'s Mem. Supp. Summ. J. at 6–7.)

Plaintiff does not dispute the fact that the term "community bank" refers to a general category of banking institution. CFB's principal founder and current board chairman, Malcom Berman, testified that the CFB name was selected because, when the bank was founded, "community banks were the thing to do because most of the lager banks were being merged out ... [a]nd the emphasis in banking was being propped up by smaller banks, community banks, who first dealt with the people on a more individual basis." (Berman Dep. at 11.) In addition, CFB's president, Michael Shomper, testified that "because of the small size of [CFB] and its one location, I would probably say that [CFB] would be described as a community bank." (Shomper Dep. at 10.) CFB's senior vice president, Karen Baker, testified similarly, noting that the CFB name was selected because "Mr. Berman wanted to make [CFB] a community bank." (Baker Dep. at 19–20.)

Nonetheless, Plaintiff argues that the addition of the term "first" to its name renders CFB's marks protectable because the term was added to reflect Berman's "customer-friendly orientation philosophy." (Pl.'s Opp. & Mot. Partial Summ. J. at 5.) Yet, the "customer-friendly" philosophy is

---

**1.** Specifically, the term "community bank" is defined as "a locally owned, locally operated bank ... [for which] its deposits come from and loans are made in the area where it is located." Robert W. Dixon, *The Gramm–Leach–Bliley Financial Modernization Act: Why Reform in the Financial Services Industry was Necessary and the Act's Projected Effects on Community Banking,* 49 Drake L.Rev. 671, 673 (2001). A community bank "may operate

with a single office or may have a limited number of offices or subsidiaries ... [i]n either case, its policies are set locally." *Id.*

**2.** Organization description available at *http://www.acbankers.org* (last visited March 11, 2005).

**3.** Organization description available at *http:// www.icba.org* (last visited March 11, 2005).

in no way unique. Rather, that philosophy is endemic to the "genus or class" of community banks which, by definition, cater to individuals in the community. *See* Dixon, 49 Drake L.Rev. at 673 (on the definition of community banks); *Ale House Management, Inc.,* 205 F.3d at 141 (holding that plaintiff's intent to distinguish its business from others in the generic category does not render a generic name protectable).

Moreover, Plaintiff's concession that the words "community bank" are generic is fatal to its claim. The only words shared between Plaintiff and Defendant are the words "community" and "bank," which, by Plaintiff's admission, are generic descriptors of the "genus or species" of locally owned banks. To permit a trademark infringement action based upon Community Banks' use of those generic terms is akin to forbidding Chevrolet from describing its products "as a 'car' or an 'automobile' because Ford or Chrysler or Volvo had trademarked these generic words.'" *Retail Services,* 364 F.3d at 538 (quoting *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.,* 781 F.2d 604, 609 (7th Cir.1986)). Such a result is not permitted under the well-settled principles of trademark law. *See, e.g., Retail Services,* 364 F.3d at 538. For these reasons, Plaintiff's marks are generic and not protectable, as a matter of law.

### 2. *Plaintiff's Marks as Suggestive or Descriptive*

Alternatively, assuming, *arguendo,* that Plaintiff's marks were held to be descriptive, Plaintiff's action would fail nonetheless because CFB has not established secondary meaning. Plaintiff suggests that it need not demonstrate that its marks acquired secondary meaning because its marks are suggestive.

Preliminarily, Plaintiff's argument that its marks are suggestive is without merit. As the Fourth Circuit has recognized, distinguishing between descriptive terms and suggestive terms is generally difficult. *Retail Services, Inc. v. Freebies Publishing,* 364 F.3d 535, 539 (4th Cir. 2004). Recognizing this difficulty, the Fourth Circuit has noted that, "[a] helpful rule of thumb is that 'if the mark imparts information directly, it is descriptive,' but '[i]f it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive.'" *Retail Services, Inc.,* 364 F.3d at 539 (quoting *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1528 (4th Cir.1984)) (quoting in turn *Union Carbide Corp. v. Ever–Ready, Inc.,* 531 F.2d 366, 379 (7th Cir. 1976)). Invoking this standard, Plaintiff suggests that some imagination is required for customers to understand that the term "Community First Bank" connotes the kind of "customer responsive image" that CFB seeks to convey. (Pl.'s Opp. & Mot. Partial Summ. J. at 15.) In *A & H Transportation,* the Maryland Court of Appeals rejected a similar argument, holding that the term "Savon Gas" was descriptive rather than suggestive because no imagination was required to ascertain that the mark referred to discount gasoline. *A. & H. Transp., Inc. v. Save Way Stations, Inc.,* 214 Md. 325, 333, 135 A.2d 289, 293 (Md.1957). Likewise, no imagination whatsoever is required to ascertain the fact that "Community First Bank" refers to a locally owned bank seeking to emphasize its ties to the community. *See generally Sara Lee,* 81 F.3d at 464 (providing Coppertone®, Orange Crush®, and Playboy®, as examples of suggestive marks because they conjure images of the associated products without directly describing those products). Consequently, even assuming, for the sake of argument, that Plaintiff's marks are not generic, the marks are descriptive at best.

To demonstrate a protectable interest in a descriptive mark, Plaintiff would be required to establish secondary meaning. *Sara Lee Corp.*, 81 F.3d at 464. Secondary meaning is defined as "the consuming public's understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *Perini Corp. v. Perini Construction, Inc.*, 915 F.2d 121, 125 (4th Cir.1990). The Fourth Circuit has recognized the following factors as relevant to the determination of secondary meaning: 1) advertising expenditures, 2) consumer studies linking the mark to a source, 3) sales success, 4) unsolicited media coverage of the product, 5) attempts to plagiarize the mark, and 6) the length and exclusivity of the mark's use. *Id.* (citing *Thompson Medical Co. v. Pfizer, Inc.* 753 F.2d 208, 217 (2d Cir.1985)).

In applying these factors, this Court is cognizant of the fact that "[p]roof of secondary meaning entails a rigorous evidentiary standard." *U.S. Search, LLC,* 300 F.3d at 525–26 (quoting *Perini,* 915 F.2d at 125). Though the existence of secondary meaning is generally a question for the trier of fact, the party seeking trademark protection has the burden of adducing sufficient evidence of secondary meaning to avoid summary judgment. *Id.* (affirming district court's grant of summary judgment where record was "wholly devoid" of evidence of secondary meaning). In meeting this burden, the Fourth Circuit has recognized that a plaintiff must demonstrate that it has established secondary meaning in the defendant's trade area, and prior to the time when the defendant entered the market. *Perini,* 915 F.2d at 125–26.

Based on the Court's review of the record, as well as evidentiary proffers of counsel at the March 4, 2005, hearing,

the evidence is insufficient to satisfy any of the secondary meaning factors. For instance, CFB spent no money on advertising in Carroll County until six months after it commenced this litigation. Even in the community of Pikesville (where CFB's sole branch is located), CFB's total advertising expenditures were not sufficient to alter the "consuming public's understanding" of the term "community bank." *Perini Corp.,* 915 F.2d at 125. With respect to sales success, CFB's revenues were relatively substantial in Baltimore County. However, prior to the initiation of this lawsuit, CFB transacted little, if any, business with residents of Carroll County. While Plaintiff conducted consumer studies, those studies were limited in scope to the determination of consumer confusion, and did not include Carroll County, which is the Defendant's trade area. As to the length and exclusivity of use, Plaintiff used its marks for only four years. With regard to the remaining factors, there is no reliable evidence of plagiarism attempts, nor of unsolicited media coverage. Even according CFB every favorable inference, Plaintiff has simply failed to demonstrate that the term "community first bank" became synonymous with its institution in the way that Coca-Cola® has with the familiar soft drink maker. *See Sara Lee Corp.,* 81 F.3d at 464. Plaintiff has therefore failed in its burden of establishing secondary meaning. Accordingly, even if Plaintiff's marks were held to be descriptive, Plaintiff's claim must fail.

Because Plaintiff has failed to demonstrate a valid, protectable trademark, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's trademark infringement claims, and Plaintiff's Motion for Partial Summary Judgment will be denied as to those claims.

## B. *Defendant's Counterclaim*

Both parties have moved for summary judgment as to Defendant's Counterclaim. The Counterclaim seeks: (1) A ruling by this Court that all three of the Plaintiff's trademarks should be canceled pursuant to § 1–412(a)(3) of the Maryland Business Regulation Code; (2) a ruling by this Court that the trademarks were improperly issued, pursuant to Section 1–412(a)(4)(iii) of the Business Regulation Code; and (3) a judgment for $150,000 in alleged damages.

Plaintiff has registered the following marks with the Secretary of State of Maryland: (1) the textual mark of "Community First Bank"(registration number: 2003–0009); (2) the stylized mark of "CFB Community First Bank" (registration number: 2003–0010); and (3) the stylized mark of "CFB" (registration number: 2003–0011). In the March 4, 2005, hearing before this Court, Defendant's counsel abandoned Community Banks' Counterclaim to the extent that the Counterclaim sought to cancel the stylized "CFB" mark, standing alone. Therefore, the validity of that mark (registration number: 2003–0011) is not affected by this ruling.

■ In light of this Court's findings as to the term "Community First Bank," the marks encompassing those words must be cancelled. Maryland Code, Business Regulation Article, Section 1–412(a)(3) states that "[t]he Secretary of State shall cancel a registration of a mark if: ... a court of competent jurisdiction orders that it be canceled on any ground." Exercising diversity jurisdiction and, subsequently, applying Maryland law, this Court is a "court of competent jurisdiction." Thus, pursuant to MD. CODE ANN., Business Regulation, § 1–412, this Court may order that Plaintiff's trademark registrations be canceled in whole.[4] Such an order is appropriate based on this Court's finding that the marks which include the words "Community First Bank" are generic, and, alternatively, that the marks are descriptive and that secondary meaning has not been established. The Court will therefore partially grant Defendant's Motion for Summary Judgment on its Counterclaims and order, pursuant to Section 1–412(a)(3), that the Secretary of State of the State of Maryland shall cancel "Community First Bank" (registration number: 2003–0009), and its stylized mark of "CFB Community First Bank" (registration number: 2003–0010).

Finally, Defendant's demand for $150,000 in compensatory damages is wholly unsupported. There is simply nothing on the record before this Court which suggests that Defendant has suffered any damage. As a result, Defendant has failed to demonstrate any genuine issue of material fact with respect to its demand for damages, and Plaintiff's Motion for Summary Judgment will be granted as to the damages asserted in Defendant's Counterclaim. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir.2003) (noting that the nonmoving party must set forth specif-

4. The Maryland General Assembly has used the International Trademark Law Association's *Model State Trademark Bill* as the basis for its trademark registration legislation. 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 22:5 (4th ed.2004). Section 9 of the 1992 version of the *Model State Trademark Bill* states that "[t]he secretary shall cancel from the register, in whole or in part: ... when a court of competent jurisdiction shall order cancellation of a registration on any ground." *Id.* at § 22:9. As the Maryland General Assembly has not yet adopted this language from the 1992 version of the *Model State Trademark Bill*, this Court cannot order the cancellation of Plaintiff's registrations in part.

ic facts demonstrating a genuine issue of trial to resist summary judgment).

## IV. *CONCLUSION*

For the foregoing reasons, Defendant's Motion for Summary Judgment will be GRANTED as to Plaintiff's trademark infringement claim, and partially GRANTED as to Defendant's Counterclaim. Plaintiff's Motion for Partial Summary Judgment will be DENIED with respect to its trademark infringement claim, and GRANTED only as to the $150,000 in damages sought in Defendant's Counterclaim. A separate Order will follow.

### *ORDER AND JUDGMENT*

For the reasons stated in the foregoing Memorandum Opinion, IT IS this 14th day of March, 2005, HEREBY ORDERED and ADJUDGED:

1. That Defendant's Motion for Summary Judgment (Paper No. 41) is GRANTED as to Plaintiff's trademark infringement claims;

2. That JUDGMENT is ENTERED in favor of Defendant against Plaintiff with respect to those claims;

3. That Defendant's Motion for Summary Judgment (Paper No. 41) is GRANTED as to Defendant's Counterclaim seeking cancellation of the following marks which were registered with the Secretary of State of the State of Maryland: (1) the textual mark of "Community First Bank" (registration number: 2003–0009), (2) the stylized mark of "CFB Community First Bank" (registration number: 2003–0010);

4. That, pursuant to MD. CODE ANN., Business Regulation § 1–412(a)(3), the Secretary of State for the State of Maryland shall cancel the foregoing marks in ¶ 3 above, as the marks are invalid;

5. That Plaintiff's Motion for Partial Summary Judgment (Paper No. 47) is DENIED as to Plaintiff's trademark infringement claims;

6. That Plaintiff's Motion for Partial Summary Judgment (Paper No. 47) is GRANTED as to the $150,000 in damages asserted in Defendant's Counterclaim;

7. Judgment is entered in favor of Plaintiff and Counter–Defendant and against Defendant and Counter–Plaintiff only as to the $150,000 damage claim asserted in Counterclaim of the Defendant and Counter–Plaintiff;

8. That the Clerk of the Court transmit copies of this Order and accompanying Memorandum Opinion to counsel for the parties and to the Secretary of State of the State of Maryland; and

9. That the Clerk of the Court close this case.